### INHABITANTS OF STOUGHTON *vs.* CITY OF CAMBRIDGE.

Norfolk.    January 7, 1896. — February 26, 1896.

Present: FIELD, C. J., ALLEN, HOLMES, & LATHROP, JJ.

*Pauper — Settlement — Married Woman — " Residence."*

A married woman, who had no settlement at the time of her marriage, and whose husband never had a settlement in this Commonwealth, although he resided in a certain city for thirteen years, paying taxes during four years only of that time, but not within a period of five years, gains a settlement in such city, under Pub. Sts. c. 83, § 1, cls. 6, 7, there being nothing to show that her residence was different from his; and, under cl. 2, their minor children follow her settlement.

CONTRACT, upon an account annexed, to recover the amount expended by the plaintiff town for the support of Elicia King and her two minor children, paupers, whose settlement was alleged to be in the defendant city.   Trial in the Superior Court, without a jury, before *Dewey*, J., who reported the case for the determination of this court, in substance as follows.

Elicia King and her two minor children, while in Stoughton, fell into distress, and stood in need of immediate relief, and the overseers of the poor of Stoughton provided such relief at an expense of $156.50, as set out in the declaration.

The statutory notice required to charge Cambridge for said expenses, if it was liable, was duly given, and Elicia King and her minor children were not removed by the overseers of Cambridge.   Elicia King never had a settlement in Cambridge, unless one results from the following facts.   On November 5, 1874, being then known as Elicia Young, and having no settle-

ment in this Commonwealth at that time, and being more than twenty-one years old, she married Thomas King, a hostler by occupation, who resided in Cambridge from April, 1872, until his death in October, 1885. Neither on November 5, 1874, nor at any time since, did he have any settlement in this Commonwealth. King paid taxes assessed on him in Cambridge in the years 1875, 1876, 1883, and 1884, and in no other years. He and Elicia kept house together in Cambridge for several months in 1875 and 1876, and again in 1883. During the rest of their married life King boarded in Cambridge and lodged there in a room in the stable of Samuel Tufts, his employer; and his wife worked out at service in various places, going occasionally to Cambridge to visit her husband. There was no evidence that she ever cohabited with him after 1883. From the time of her marriage to King until April 30, 1887, there was no evidence that she received relief as a pauper in Cambridge. They had two children, being the children mentioned in the declaration, one born in Stoughton on May 18, 1877, and the other in Boston on July 10, 1881. These children, when the parents were not keeping house together, were boarded with the wife's sister in Stoughton, both parents contributing toward the expense of their board. Elicia King, when not with her husband at Cambridge, as above set forth, and when not out at service, boarded a part of the time in Boston and a part of the time in Stoughton. At Boston she was in the almshouse.

On the foregoing facts the judge ruled and found that Elicia King had her settlement in Cambridge; and found for the plaintiff. If the ruling and finding were correct, judgment was to be entered on the finding; otherwise, it was to be set aside, and judgment entered for the defendant.

*G. A. A. Pevey,* for the defendant.

*O. A. Marden,* for the plaintiff.

ALLEN, J. According to the terms of the report, Thomas King, the husband, never had a settlement in this Commonwealth, and his wife had none at the time of her marriage to him, and has gained none since in Cambridge, unless she " resided " there for five years together, within the meaning of Pub. Sts. c. 83, § 1, cls. 6, 7.

The word " residence " is used in different senses. Generally,

in the laws relating to taxation, voting, and settlement, it means the same as domicil. Usually it means the same in the law of divorce; *Shaw* v. *Shaw*, 98 Mass. 158, 159; though with a well recognized exception. *Burlen* v. *Shannon*, 115 Mass. 438, 447. *Burtis* v. *Burtis*, 161 Mass. 508. For the purpose of giving notice to an indorser, his place of residence implies less permanency of abode. *Wachusett National Bank* v. *Fairbrother*, 148 Mass. 181. We have now to do only with the meaning of the word " reside " under the pauper laws. It was assumed to mean the same as domicil in *Worcester* v. *Wilbraham*, 13 Gray, 586, 589, and *Wilbraham* v. *Ludlow*, 99 Mass. 587, 591. Temporary absences do not effect a change of residence under the pauper laws any more than under laws relating to taxation. *Lee* v. *Lenox*, 15 Gray, 496. *Chicopee* v. *Whately*, 6 Allen, 508. *Borland* v. *Boston*, 132 Mass. 89. *Greenfield* v. *Buckland*, 159 Mass. 491. Imprisonment does not change one's residence for taxation, settlement, or divorce. *Hanson* v. *Hanson*, 111 Mass. 158, 160. It was said in *Marden* v. *Boston*, 155 Mass. 359, 361, that the purpose of St. 1874, c. 274, § 2, (now Pub. Sts. c. 83, § 1, cl. 6,) was to place married women on the same footing in respect to the acquisition of a settlement as widows and unmarried women. Nevertheless, it still remains the law of Massachusetts that ordinarily a married woman's domicil is that of her husband. *Burtis* v. *Burtis*, 161 Mass. 508. *Watkins* v. *Watkins*, 135 Mass. 83, 85. There is nothing in the facts of the present case to show that the domicil or residence of Mrs. King was different from that of her husband. His residence was in Cambridge from 1872 till 1885, though he gained no settlement thereby, for want of being taxed often enough. Her residence followed his, and by virtue of Pub. Sts. c. 83, § 1, cls. 6, 7, she gained a settlement by reason of her residence, though he did not; and by clause 2 of the same section the children followed her settlement. The ruling and finding of the court were therefore right.

*Judgment for the plaintiff.*