INHABITANTS OF PALMER *vs.* INHABITANTS OF HAMPDEN.

Hampden.    September 29, 1902. — January 10, 1903.

Present: MORTON, LATHROP, BARKER, & LORING, JJ.

*Pauper*, Settlement, Immediate relief.

Under Pub. Sts. c. 83, §§ 1, 5, a woman having a settlement in a town does not lose it by moving to another town, there establishing her domicil and retaining it for three years, then leaving the second town expecting never to return or intending to return at some indefinite time, working in other towns for three years, and then returning to the second town.

An action may be maintained by one town against another, under Pub. Sts. c. 84, § 14, for money paid for the relief of a person having a settlement in the defendant town, who stood in "need of immediate relief," although at the time of the relief the person relieved had $50 in a savings bank in another town.

CONTRACT, under Pub. Sts. c. 84, § 14, for $60 paid by the town of Palmer for the relief of one Mary A. Walker, alleged to have a lawful settlement in the town of Hampden, when she stood in need of immediate relief. Writ dated May 1, 1901.

In the Superior Court the case was tried without a jury by *Maynard*, J., who found for the plaintiff, and assessed damages in the sum of $62. The defendant alleged exceptions.

*D. E. Webster & C. S. Ballard*, for the defendant.

*T. W. Kenefick & E. E. Hobson*, for the plaintiff.

LATHROP, J. 1. The first point presented is whether at the time of the relief furnished to the pauper she had her settlement in the town of Hampden. It is admitted that in April, 1894, she had a settlement in that town. This settlement, by force of the statute, Pub. Sts. c. 83, § 5, continued until she acquired a new settlement elsewhere in this State. The question then is whether on the evidence the judge was warranted in finding that no other settlement had been acquired by her.

The pauper left Hampden in April, 1894, and went to Palmer, intending to make that place her home in the future, with Mrs. Shaw, a cousin. After going to Mrs. Shaw's, she made visits, and worked in other towns. About Thanksgiving, 1897, Mrs. Shaw leased her house in Palmer, and bought a farm in Brimfield and moved upon it with her husband and family, with the intention of living there the rest of her life; but, after residing eight or nine months in Brimfield, Mrs. Shaw returned to Palmer to reside.

The pauper testified that when she learned of Mrs. Shaw's purpose to leave Palmer she was working in Hampden, and she went to Mrs. Shaw's and got what things she wanted to keep, and told Mrs. Shaw she could burn the rest; that when Mrs. Shaw moved to Brimfield, she, the pauper, never expected to go back to Palmer, though that seemed more like home to her than any other town.

While Mrs. Shaw was in Brimfield, the pauper worked in Hampden and in Monson. In January, 1900, while working in Hampden, she became ill and went to Mrs. Shaw's in Palmer, where she has since resided, being unable to work; and since October, 1900, the pauper has been aided by Palmer to the extent of $2 a week, paid to Mrs. Shaw for her board and care.

While the judge made the first finding of fact in favor of the defendant, he declined to make other findings asked for by the defendant; but he made further findings of fact which we have in substance set forth, and also found that the pauper never gained a settlement in Palmer; and found for the plaintiff.

We are of opinion that, so far as the question of settlement is concerned, we cannot say that the judge was wrong.

Settlements may be acquired in various ways, as pointed out

in the Pub. Sts. c. 83, § 1. The only provision which has any bearing upon this case is cl. 6 of this section, which provides: "Any woman of the age of twenty-one years, who resides in any place within this State for five years together, shall thereby gain a settlement in such place."

It is urged, however, that the word "resides" in the clause under consideration is equivalent to having a domicil, and that the first finding of the judge is equivalent to a finding that the pauper acquired a domicil in Palmer. *Stoughton* v. *Cambridge*, 165 Mass. 251. And the argument is that having once acquired a domicil there she retained it until she acquired one elsewhere. The defendant asked the judge "to find as a fact, that when Mary A. Walker removed from Hampden to the town of Palmer, it was with the intention of making Palmer her home in the future, and that she continued to regard the town of Palmer as her home." The judge made this finding; and this is the basis of the argument above stated. But the judge also found specially that when Mrs. Shaw removed from Palmer, the pauper, who was then employed in Hampden, "took from the house of Mrs. Shaw, in Palmer, all the belongings which she cared to save, to the place of her employment in Hampden, having no intention of ever again making her home in Palmer." These two findings of fact must be taken together, and they are not irreconcilable. To regard a place as a home after one has left it and removed all her belongings is not equivalent to having no intention "of ever again making her home there."

But, even if the pauper intended when she left Palmer to return at some indefinite time, this would not be enough to retain her domicil in Palmer. What constitutes domicil is mainly a question of fact, and the element of intention enters into it. *Olivieri* v. *Atkinson*, 168 Mass. 28. Mere intention without proof of other facts with which such intention can be connected is not enough. *Holmes* v. *Greene*, 7 Gray, 299. So to acquire a new domicil it is not necessary for a person to reside in a place with the purpose of making it his permanent home and residence. It is enough if he resides there with the intention to remain for an indefinite period of time, and without any fixed or certain purpose to return to his former place of abode. *Whitney* v. *Sherborn*, 12 Allen, 111.

The case at bar closely resembles in its facts those in *Wilbraham* v. *Ludlow*, 99 Mass. 587. In that case it was held that a laborer who abandoned his home and worked in different towns, with no opinions, desires or intentions in relation to his residence, might be regarded as having a home or domicil wherever he worked. In the case before us the pauper left Palmer in 1897, and did not return to Palmer until 1900. If she left Palmer with no intention of ever returning there to make the place her home, she might well be regarded as having given up her domicil, and as having acquired a new one wherever she worked. The pauper herself testified that when Mrs. Shaw moved to Brimfield, in 1897, she never expected to go back to Palmer. There was also evidence in the case that the pauper said that when she was at work in Monson, Hampden and different places, she considered it her home wherever she stayed over night, and that she had not lived in Palmer or in any other town five years since she left Hampden.

If the granting of the first request for findings of fact is to be construed as a finding that the pauper acquired a domicil in Palmer, the refusal to find other facts and the special findings of the judge may well be construed as amounting to a finding that the pauper acquired a domicil in other places ; and as the pauper did not have her domicil in any place for five years together, her settlement in the defendant town remained.

There is one finding of the judge which remains to be considered, which is that when the pauper learned of the return of Mrs. Shaw to Palmer, she again arranged with Mrs. Shaw to make her home with her as before her removal from Palmer. When this was done does not appear. In fact the pauper did not return to Palmer until 1900, while Mrs. Shaw returned there in 1898. If the pauper had acquired a domicil in another place, she did not change it in fact until she returned to Palmer.

2. The remaining question is whether the pauper fell into distress and stood in need of immediate relief, when aid was furnished her. Pub. Sts. c. 84, § 14. The judge found this issue in the affirmative. It appears that all proper notices were given, and the only ground upon which it is contended

that the pauper did not stand in need of immediate relief is that she had at the time $50 in a savings bank in Monson.

Whether a person stands in need of immediate relief is largely a question of fact; and this court will not revise the finding of the court below, unless it is clearly erroneous. *Templeton* v. *Winchendon*, 138 Mass. 109. There can be no doubt that the evidence shows a case to warrant the judge in finding as he did, unless the mere fact that the pauper had $50 in the bank compels us to rule, as matter of law, that the finding was wrong. We are of opinion that the judge below was right. In *Oakham* v. *Sutton*, 13 Met. 192, 196, it was said by Chief Justice Shaw: " All which could be required of officers would be vigilant inquiry and sound judgment in determining whether one obviously and apparently in need of relief is really so. Instances are not wanting, of persons living in alms-houses, or otherwise supported by public charity, on whom have been found considerable sums of money concealed amongst the rags which indicated the most squalid poverty. If overseers, who are bound by law to afford immediate relief to actual want, and who must act upon the evidence before them, are sometimes deceived by appearances, still their acts, done in good faith, must be deemed acts binding on the town." See also *Sturbridge* v. *Holland*, 11 Pick. 459 ; *Templeton* v. *Winchendon*, 138 Mass. 109.

<div align="right">

*Exceptions overruled.*