FRANK O. WHITE, administrator with the will annexed, *vs.* BEN L. STOWELL & another.

Suffolk. January 14, 1918. — March 5, 1918.

Present: RUGG, C. J., DE COURCY, PIERCE, & CARROLL, JJ.

*Domicil.*

A domicil is not lost until another is acquired; and, if a man having a domicil in a city in this Commonwealth moves to another city in an attempt to find employment there and looking for a place to establish himself where he can support his family, without any fixed intention of making the city to which he has moved his home unless he shall succeed in obtaining such an occupation there,

until he has succeeded in obtaining such an occupation in the city to which he has moved his absence from his domicil in this Commonwealth is temporary and his domicil here has not been abandoned.

APPEALS by two different creditors from a decree of the Probate Court for the county of Suffolk allowing the will of Henry W. Wellington, who died in the city of New York in the State of New York on July 29, 1915, and was alleged to have been a resident of Boston at the time of his death.

The appellants stated as their objections to the decree appealed from "that Henry W. Wellington was domiciled in the city of New York in the county and State of New York at the time of his death, and that therefore probate proceedings concerning any alleged will of said Henry W. Wellington should first be held in that jurisdiction."

The appeals were heard together by *Crosby,* J., the evidence having been reported by a commissioner appointed under Chancery Rule 35. The single justice made a memorandum of decision containing among his findings those that are stated in his opinion.

The memorandum concluded as follows:

"I find that when the testator went to New York in April, 1914, his principal, if not his sole, purpose in going there was to secure a position or employment. He seems to have been diligent and persistent in his efforts to accomplish the desired result, but without success.

"I further find that from April 14, 1914, until the date of his death he had the same object in view, namely, to secure employment. I find that he was willing to be so employed in New York or in any other place where he could obtain a desirable situation.

"I find that he did not intend to establish himself permanently in New York, but was living there temporarily; he probably would have decided to take up his residence in that city or in any other place where he could have obtained employment.

"I find upon all the evidence that he did not live in New York for an indefinite period without a fixed and certain purpose to return to Boston.

"Accordingly I find that the testator never acquired a domicil in New York, but that Boston continued to be the place of his domicil up to and including the date of his death.

"It follows that a decree must be entered affirming the decree

of the Probate Court and remanding the case to that court for further proceedings."

By order of the single justice a final decree was entered ordering that the decree of the Probate Court allowing the will of Henry W. Wellington and appointing Frank Owen White administrator thereof with the will annexed be affirmed and that the case be remanded to the Probate Court for further proceedings. The appellants appealed.

*H. L. Barrett,* for the appellant Stowell.

*W. H. Vincent,* pro se.

*H. Williams, Jr.,* (*B. D. Barker,* with him,) for the administrator with the will annexed of the estate of Henry W. Wellington.

CARROLL, J. This is an appeal from a decree allowing the will of Henry W. Wellington, alleged to have been a resident of Boston on July 29, 1915, the date of his death. The appellants contend that the testator was a resident of New York. In the Supreme Judicial Court the single justice found that the domicil of the testator was in Boston and affirmed the decree of the Probate Court.

Henry W. Wellington was born in Boston in 1875; after his marriage in 1902 he lived in Hingham and in Boston; and in 1914 his domicil was in Boston where he occupied an apartment which he had leased for two years beginning September 1, 1913. Early in the year 1914, it was discovered he had misappropriated a large amount of money belonging to corporations in which he was an officer, and he was forced to sever his connection with them. He was then without employment. On March 31 or April 1 he left Boston for New York. Mrs. Wellington, hoping to secure employment for her husband, went to California, where she had friends, and remained there until May, 1914, when she joined her husband in Washington in the District of Columbia. Accompanied by a daughter of Mrs. Wellington by a former marriage Mr. and Mrs. Wellington went to New York; they were registered by Mr. Wellington at the Brevoort Hotel as of New York, and remained there a week or ten days. In June, 1914, they hired a furnished apartment in New York from friends of Mrs. Wellington, and occupied it until September, 1914. For a time Wellington was ill in a hospital in New York. After leaving it, he went to Gloucester in this Commonwealth; but he returned to New York

before Christmas, and in 1915 leased an unfurnished apartment for eight months, which he and Mrs. Wellington occupied until he committed suicide, July 29, 1915. After his departure from Boston he was not engaged in any business and was unsuccessful in securing employment either in New York or elsewhere.

The question of a person's domicil is mainly a question of fact; a domicil once acquired is not lost until a new one is obtained. Mere temporary absence does not change it, and personal presence in a place, even for a protracted period, does not of necessity fix the domicil in that place. While actual residence is a circumstance tending to establish the place of domicil at the place of residence, it is not conclusive. *Otis* v. *Boston,* 12 Cush. 44. *Collester* v. *Hailey,* 6 Gray, 517. *Perkins* v. *Davis,* 109 Mass. 239. *Olivieri* v. *Atkinson,* 168 Mass. 28. *Palmer* v. *Hampden,* 182 Mass. 511. "A person cannot be said to lose his domicil or residence by leaving it with an uncertain, indefinite, half formed purpose to take up his residence elsewhere. . . . Until his purpose to remain had become fixed, he could not be said to have abandoned his former residence." *Worcester* v. *Wilbraham,* 13 Gray, 586, 590. See *Sears* v. *Boston,* 1 Met. 250.

In 1914 the testator's domicil was in Boston. That domicil remained until a new one was actually acquired. When he left Boston and took up his residence in New York, if it was his intention to reside there and make it his home, without any intention of returning to Boston, then his domicil was in New York at the time of his death; but, if his absence was temporary, if he was seeking employment and looking for a place to establish himself where he could support his family, without any fixed and settled intention of residing in New York, or making it his home, then he did not acquire a new domicil and the domicil of his origin remained.

There was some evidence indicating an intention to give up his home and domicil in Boston — his letters, his resignation from the Harvard and Engineers clubs of Boston, his registering at the Brevoort Hotel and stating that his residence was in New York, the sending of his furniture to Ardmore in Pennsylvania, and his hiring apartments in New York — these facts together with the additional circumstances, standing by themselves, would seem to indicate a permanent change of residence, but they are not conclusive.

.There was other evidence of controlling importance which makes it clear that he had not given up Boston as his permanent residence, that he was hoping or expecting to return to it as soon as he could so arrange his affairs, and that his absence was only temporary. When he was sick in the hospital, at the request of Mrs. Wellington, a business acquaintance was endeavoring to obtain for her husband a position in Boston. In June, 1915, six weeks before he died, he said to his aunt, "I rather like New York for business very well, but May [his wife] prefers Boston," and "he was undecided." In July, 1915, he said "he thought he was going to get some business, . . . if he did he would leave New York and he might go West, and he might come back to Boston." On November 24, 1914, he made application to the assessors of Boston for an abatement of his personal tax of $10,000, which was reduced to $600. In April or March, 1914, he wrote his cousin that on account of business reverses he was away for a little while to look up some business, and in May of the same year he wrote her saying "on his return to Boston, which he hoped would be in a short time. . . ." He told a boyhood and college friend in 1914 and 1915, "that he had never definitely given up his residence in Massachusetts, that he had furniture there and that he was living around until he settled on something that would give him an adequate living." In April, 1914, in the sublease of their apartment in Boston, both the testator and Mrs. Wellington described themselves as of Boston. Before he went to New York, he told his son-in-law that "he was going to New York to look for a job, but he did n't like New York as a place to live."

These facts, together with his letters and the other circumstances of the case, bring us to the conclusion that he had no definite intention to reside permanently in New York. He was unsettled. He had no established place of business. He was seeking employment. His place of residence depended upon his success in obtaining an occupation. Until he succeeded in this his absence from Boston was temporary and the original domicil was not abandoned. *Ross* v. *Ross*, 103 Mass. 575. *Olivieri* v. *Atkinson, supra. Babcock* v. *Slater*, 212 Mass. 434. *Sampson* v. *Sampson*, 223 Mass. 451, 460.

*Decree affirmed.*