AGASSIZ v. TREFRY, Tax Com'r, et al. (two cases).

(District Court, D. Massachusetts. July 14, 1919.)

Nos. 879, 892.

1. TAXATION ☞93—DOMICILE OF PROPERTY OWNER—CHANGE.

A plaintiff, on the facts shown, *held* not to have changed his legal domicile from Massachusetts, where he owned two residences and where was the principal headquarters of his business, to Newport, R. I., where he owned an interest in a residence to which he notified the taxing authorities of both states he had removed and where he voted and was taxed; it appearing that during five years succeeding there had been no actual change of residence of himself or family, who continued to occupy his Massachusetts dwellings with brief visits to Newport.

2. DOMICILE ☞8—CHANGE OF DOMICILE—PRESUMPTION AND BURDEN OF PROOF.

A domicile once acquired is presumed to continue until it is shown to have been changed, and the burden of proof rests upon a party alleging

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

a change of domicile to establish by reasonably satisfactory evidence both the fact of residence in the new locality and the intention to remain there.

In Equity. Two Suits by Rodolphe L. Agassiz against William D. T. Trefry and others. Decree for defendants.

Putnam, Putnam & Bell, Stoughton Bell, Coleman Silbert, and Julian Codman, all of Boston, Mass., for plaintiff.

Wm. Harold Hitchcock, Asst. Atty. Gen. of Massachusetts, and Henry C. Attwill, Atty. Gen. of Massachusetts, for defendants.

ANDERSON, Circuit Judge. These are two bills in equity brought to restrain the tax commissioner of Massachusetts from assessing upon and collecting taxes from the plaintiff for the years 1917 and 1918 under the Massachusetts Income Tax Act of 1916, c. 269.

The plaintiff alleges that he was domiciled in the city of Newport, R. I., during both of those years, and therefore not subject to personal or income taxes in the commonwealth of Massachusetts. Motions to dismiss were denied, thus determining in the plaintiff's favor all questions except that of the plaintiff's domicile.

That the plaintiff is entitled to relief if legally domiciled in Rhode Island is now, in effect, conceded by the Attorney General of the commonwealth.

Compare Dunn v. Trefry, 260 Fed. 147, —— C. C. A. ——, decided by the Court of Appeals for the First Circuit May 26, 1919; Smyth v. Ames, 169 U. S. 466, 517, 18 Sup. Ct. 418, 42 L. Ed. 819; Union Pacific v. County Commissioners, 247 U. S. 282, 38 Sup. Ct. 510, 62 L. Ed. 1110; Nevada-California Power Co. v. Hamilton (D. C.) 235 Fed. 317, 339; Ex parte Young, 209 U. S. 123, 28 Sup. Ct. 441, 52 L. Ed. 714, 13 L. R. A. (N. S.) 932, 14 Ann. Cas. 764.

As it is admitted that the plaintiff was domiciled in Hamilton, Mass., until the fall of 1914 or spring of 1915, the sole question remaining to be determined is whether he has effectually changed his domicile from Hamilton to Newport. The salient facts are as follows:

The plaintiff's father died in 1910 domiciled in Newport. He left a large estate, part of which was a homestead in Newport assessed for about $175,000. The plaintiff had spent much of his youth in Newport. In this homestead, after his father's death, were furniture, pictures, and other property having both money and sentimental value to the plaintiff, in which he had a one-third interest. Under the father's will his three sons were trustees. The plaintiff's two brothers have long been domiciled in Newport. The father's estate was settled in Newport. One of his brothers is a bachelor; the other brother has no children. This homestead, subject to some sort of a contingent interest in Harvard College, passed under the father's will to the three sons. Prior to the plaintiff's attempt to change his domiciliary status, it was the practice each summer to have this homestead opened in the spring and equipped with the servants of the bachelor brother; the expenses being shared by the three brothers. During the winter the place was kept heated, to avoid dampness, and was in

charge of a caretaker and his wife. After it was opened for the summer, each of the three brothers or some member of the family of the two married brothers was accustomed to go to the Newport house and spend some part of each summer or fall season there. The plaintiff and his family spent all or a large part of the summers of 1910 and 1911 in the Newport homestead. Neither the plaintiff nor his family has spent a summer there since 1911.

The plaintiff owns, and has for many years owned, a substantial estate in Hamilton, Mass., assessed for $35,000 to $40,000; also, a house in Boston assessed for $60,000 to $70,000. His family, now consisting of his wife and one unmarried daughter (he also has one married daughter), have habitually spent their winters in Boston and their summers in Hamilton. The Hamilton place has not ordinarily been kept open or heated during the winter, although horses in charge of a caretaker are kept on the estate.

The plaintiff is president of the Calumet & Hecla Mining Company, and president or high official of various other mining companies whose properties are mainly located in Michigan. The home office of these companies is in Boston; the directors' meetings are held in Boston; but most or all of the companies also have offices in New York. The plaintiff's chief place of business is therefore Boston, but increasingly of recent years he is in New York. He also spends no inconsiderable time in Michigan. In New York he has for some years maintained an apartment. It thus appears that, prior to his attempted change of domicile, the plaintiff had four residences or places fit and convenient for a dwelling place; one in Hamilton, one in Boston, one in Newport, and one in New York.

In November, 1914, the plaintiff, under the advice of counsel, undertook to change his domicile from Hamilton, Mass., to Newport, R. I. In that month he notified the tax assessors of Newport that thereafter he should claim his residence in Newport. The assessors acted on this as a sufficient notice, and have since that time assessed the plaintiff as domiciled in Newport. He has paid personal taxes there for four years. The tax authorities also increased the assessment upon the father's trust estate, which had previously been assessed on the basis of two only of the three trustees being domiciled in Rhode Island. About the same time, the plaintiff and his two brothers purchased the contingent interest of Harvard College in the Newport homestead. He also bought a small lot of land in order that as a separate landowner he might have certain voting rights accruing under the laws of Rhode Island to landowners. He registered in Newport as a voter and has voted there since the spring of 1915. He also opened in Newport a bank account to which he has been accustomed to transfer from his main bank account kept in Boston funds enough to cover bills accruing in and about Newport. He also transferred his securities from a safe deposit box in Boston to one in Providence, R. I. In March, 1915, the plaintiff notified the assessors of Hamilton that he had changed his domicile to Newport. The Hamilton tax authorities accepted this notice as sufficient, and since that time have assessed no personal tax upon him in Hamilton. No per-

sonal tax had been assessed on him in Massachusetts since that notice until the defendant tax commissioner undertook to collect the state income tax for 1917 and 1918. When the plaintiff gave his notice to the tax authorities of Newport and of Hamilton, he was either in New York or Boston; probably in Boston. His family at that time was not in Newport.

Under the advice of counsel, on April 1, 1915, and probably on the same date in 1916, 1917, and 1918, so-called "tax days," the plaintiff was in Newport, but not at the homestead in Newport. The only other time, when during the year 1915 he or his family were in Newport, was during three weeks in September. At that time servants were sent down to Newport from the Hamilton place, but the Hamilton house was not closed. During the year 1916, the plaintiff's family was not in Newport at all. He was there only a day or two to cover "tax day." In 1917, the plaintiff sent some of his servants down for a week in August, and he or some of his family, or both, were there for about a week. In 1918, except for his presence on tax day, neither he nor his family was in Newport at all.

[1] It thus appears that since the attempted change of domicile the living and business habits of the plaintiff and his family have not been changed. The actual dwelling is in Hamilton and Boston, with considerable periods of time spent in Michigan, except that during the war period the plaintiff has in war work spent considerable time in Washington, D. C. The plaintiff testifies that, except for war conditions and war work in which he and some of his family were engaged, more time would have been spent in Newport. But the evidence does not warrant a finding that Newport is or was intended to be by the plaintiff or his family the real abiding place of himself or his family. It is not their "home" within the ordinary meaning of that word. Compare Thayer v. Boston, 124 Mass. 132, 144, 26 Am. Rep. 650.

[2] On these facts, has the plaintiff legally changed his domicile from Hamilton, Mass., to Newport, R. I.? The question is obviously close and not free from doubt. Difficult and important questions of domicile are increasingly before the courts. They arise not merely in tax cases like the present, but in will cases, bankruptcy cases, pauper settlement cases, and when jurisdiction depends upon diversity of citizenship. I find it impossible to reconcile the numerous decisions. This is apparently the view of the Supreme Court of Massachusetts. In Phillips v. Boston, 183 Mass. 314, at 315, 67 N. E. 250. Mr. Justice Braley said:

"While no exact and full definition to cover all cases can be given of the word 'domicile,' it was said in Lyman v. Fiske, 17 Pick. 231, 234 [28 Am. Dec. 293], that 'in general terms, one may be designated as an inhabitant of that place which constitutes the principal seat of his residence, of his business, pursuits, connections, attachments, and of his political and municipal relations. It is manifest, therefore, that it embraces the fact of residence at a place, with the intent to regard it and make it his home. The act and intent must concur, and the intent may be inferred from declarations and conduct.' It is the settled policy of the law that for the purpose of pauper relief the domicile of origin continues until another has been acquired, and it must now be taken to be too well settled to admit of doubt that to reside or have

a place of residence in a city or town means not merely physical presence therein, but being there with the deliberate intention and purpose of choosing it as a home; or, in other words, making it a domicile. Greenfield v. Buckland, 159 Mass. 491 [34 N. E. 952]; Thayer v. Boston, 124 Mass. 132 [26 Am. Rep. 650]; Pickering v. Cambridge, 144 Mass. 244 [10 N. E. 827]; Stoughton v. Cambridge, 165 Mass. 251 [43 N. E. 106], and cases cited; Palmer v. Hampden, 182 Mass. 511 [65 N. E. 817]."

The general rules seem clear and, theoretically, easy of application; when, however, they are actually applied to varying states which arise under the modern changing and complicated conditions of business and family life, they are found, practically, to be very far from clear and to be exceedingly difficult of application. The general principles are laid down by Mr. Justice Swayne in Mitchell v. United States, 21 Wall. 350, 22 L. Ed. 584, as follows:

"A domicile once acquired is presumed to continue until it is shown to have been changed. Where a change of domicile is alleged, the burden of proving it rests upon the person making the allegation. To constitute the new domicile two things are indispensable: First, residence in the new locality; and, second, the intention to remain there. The change cannot be made except facto et animo. Both are alike necessary. Either without the other is insufficient."

The questions of difficulty are to determine whether what the plaintiff in this case did constituted that concurrence of fact and intent requisite to change his domicile from Hamilton to Newport. If desire be the main or controlling element in the intent which the law requires, the plaintiff intended to change his domicile from Hamilton to Newport. But if the requisite intent be a purpose to make Newport and not Hamilton the real dwelling place of himself and his family, then his case fails for lack of the requisite intent. If the "residence in the new locality" means living, dwelling, residing, staying for substantial periods of time in the new locality, then the plaintiff has not resided and does not reside in Newport. But if "residence" means only comfortable or luxurious facilities for living, used only on rare and casual occasions, then the plaintiff may reside in Newport.

Brief consideration of a few cases may assist in reaching a conclusion.

In Barron v. Boston, 187 Mass. 168, 72 N. E. 951, the full court of Massachusetts reversed the decision of the superior court, which held that the plaintiff had not changed his domicile from Boston to Cohasset. The plaintiff in that case had a fully equipped residence in both places. While dwelling in Cohasset in the fall of 1900, he formed the intention then and there of becoming domiciled in Cohasset. He thereupon gave notice to the assessors of Boston that he was a resident of Cohasset. But he did not before the next May tax day notify the assessors of Cohasset that he had become a resident and potential taxpayer of that town; nor was his family actually living in Cohasset on May 1, 1901. The full court, reversing the superior court, held that, as he was actually dwelling in Cohasset at the time when he formed his intention, this was effective to change his domicile at that time. The decision of the full court apparently

turned upon the fact that, while actually dwelling in Cohasset in the fall of 1900, the plaintiff then and there determined to make that his home or domicile. The plaintiff's domicile thus became fixed in Cohasset in 1900. And the full court therefore held immaterial that which the superior court regarded as of controlling importance, to wit, that on May 1, 1901, as of which day the tax in controversy was levied, neither the plaintiff nor his family was living in Cohasset, and that the plaintiff had not, prior to that date, notified the Cohasset tax authorities that he was there domiciled. Otherwise stated, the full court held that in the fall of 1900 there was the concurrence of residence and intent to continue that residence as the domicile of the plaintiff which made it then and there a domicile not thereafter lost because of absence on the so-called tax day.

Compare Whately v. Hatfield, 196 Mass. 393, 82 N. E. 48, 13 Ann. Cas. 690; Borland v. Boston, 132 Mass. 89, 100, 42 Am. Rep. 424; Harvard College v. Gore, 5 Pick. (Mass.) 370; Jennison v. Hapgood, 10 Pick. (Mass.) 77; Viles v. Waltham, 157 Mass. 542, 32 N. E. 901, 34 Am. St. Rep. 311.

In Huntly v. Gaskell (1906) A. C. 56, 66, it is pointed out by Earl Halsbury that change of domicile is not lightly to be inferred; that the burden of proof rests upon the party who alleges a change of domicile to show by reasonably satisfactory evidence concurrence of the requisite fact and intent—both.

There is a considerable discussion of the authorities and cases relative to domicile in Delaware, etc., Co. v. Petrowsky, 250 Fed. 554, 558, et seq., 162 C. C. A. 570.

In Gilman v. Gilman, 52 Me. 165, 83 Am. Dec. 502, a will case, many of the earlier authorities are cited and reviewed. In that case, the court, on evidence close and doubtful, reached the conclusion that Gilman's original domicile in Waterville, Me., had not been lost. The court pointed out the impossibility of reconciling the various definitions of domicile and states of fact requisite to work a change of domicile, dealing particularly with cases of persons having various residences or spending much of their lives in travel, concluding:

"If any general rule can be applied to such cases, we think it is this; that the domicile of origin, or the previous domicile, shall prevail. This is in accordance with the general doctrine, that the forum origines remains until a new one is acquired."

In this circuit the latest decision dealing with the question of domicile is Dunn v. Trefry, supra, decided by the Court of Appeals on May 26, 1919. Manifestly, that case, if in point, should be followed by this court. The ground upon which the decision turned, reversing the District Court, is not entirely clear. The question there was whether the plaintiff, Mrs. Dunn, had changed her domicile from Newport, R. I., to Boston, Mass. Like the case at bar, therefore, it involved the problem of the legal requisites of a change of domicile. The opinion leaves it somewhat uncertain as to whether the decision reversing the District Court turns upon the facts or upon points of law. But the fact that no reference is made to the evidence upon which the District Court found that Mrs. Dunn was domiciled

in Boston fairly grounds the conclusion that the error corrected was one of law and not of fact.

The controlling facts in that case are as follows: The plaintiff was born and had long lived in Newport. She purchased in 1913 a house in Boston which she occupied with her husband and son who was domiciled in Boston. In 1916 her husband died in Boston. She and her husband had come to Boston in order that the father might have the medical attendance of the son but with an intention of returning to the Newport home. The house in Newport, with some furnishings, remained in the occupancy of the plaintiff's sister. The plaintiff was accustomed periodically to visit her sister for a short time each fall and spring. She also contributed to the expense of maintenance of the old home.

She desired to retain her Newport domicile. But she testified in effect (evidence not adverted to in the opinion of the Court of Appeals) that she intended to continue living with her son and daughter, both unmarried, and both domiciled in Boston, unless her son should marry—a contingency not then contemplated. On this evidence, this court found that the plaintiff was dwelling in Boston with her son and daughter, and intended to continue so to dwell, subject to a remote contingency; and therefore ruled that her domicile was in Boston. The Court of Appeals held,

"The facts as to her mode of living do not outweigh her expressed intent to retain her Rhode Island domicile."

Manifestly, this language as to "expressed intent" means that the plaintiff's "desire" to retain her Newport domicile, buttressed by her retention of facilities in her old home, is the legal intent required by the law, notwithstanding her expressed "purpose" to make her real dwelling place with her son and daughter in Boston. This decision thus lays emphasis upon desire as a main or controlling element in intent. But the opinion also lays emphasis upon the presumption that a domicile once obtained is presumed to continue until the burden of overcoming this presumption is sustained. In this aspect, it makes against the plaintiff's contention in the present case. It is in this respect somewhat like Gilman v. Gilman, supra.

On facts legally indistinguishable, the result reached by the Court of Appeals in Dunn v. Trefry is the exact reverse of that reached by the Supreme Court of Massachusetts in Whitney v. Sherborn, 12 Allen, 111.

Whitney was domiciled in Ashland. Mrs. Dunn was domiciled in Newport. Whitney leased his farm in Ashland, leaving some of his cattle and furniture there and moving some to Sherborn, whither he took his family and most of his furniture for the purpose of overseeing men there employed by him. Mrs. Dunn's course was analogous. In his agreement for leasing his Ashland farm, it was provided that, if he should at any time be obliged to leave Sherborn, he should move back to his house in Ashland and the tenant should leave it. Mrs. Dunn intended to return to Newport to live if her son should marry. Whitney desired, as Mrs. Dunn did, to retain his old domicile. Sherborn taxed him. On a suit to recover the tax, the superior court

instructed the jury in substance that to effect a change of domicile there must be a removal from the old home unaccompanied by the purpose to return there. The full court of Massachusetts held this instruction to be error, saying:

"The proper instruction would have been, that if the plaintiff was residing in Sherborn on May 1, 1862, with an intention to remain there for an indefinite period of time, and without a fixed purpose to return to Ashland as soon as his work in Sherborn was completed, or if the latter purpose was uncertain or doubtful, then his legal domicile would be in Sherborn. The plaintiff must have a domicile somewhere. It could not be in Ashland, if he had gone to reside elsewhere, having no intention to return to his old home, or if his purpose was unformed or indeterminate, either as to the length of his residence in Sherborn, or as to his eventual return to Ashland. If such was the state of the case, there could be no concurrence of fact and intent, which would be necessary in order to create a legal domicile in the latter place."

This decision, reversing the superior court, makes the actual dwelling place of the man and his family the fact of controlling importance. A doubtful or merely contingent purpose, such as Mrs. Dunn had, to return to her old home, was held not enough to prevent the domicile from attaching to the new place in which there was a purpose of remaining indefinitely as the home or dwelling place. Clearly in this decision of the Massachusetts court, desire, as distinguished from intent, to live or dwell, is regarded as of no legal importance. The intent held requisite is intent to continue to live in the locality indefinitely. The hope, or expectation, or desire, of returning to the former place is held of no significance.

These reverse results, reached by two appellate courts on facts indistinguishable as to their legal significance, are a striking illustration of the difficulty of applying the general rules in any certain or uniform way.

Another case in this district in which the legally significant facts are closely analogous to the facts in the case at bar is In re Sedgwick (D. C.) 223 Fed. 655, a decision by Judge Morton.

That was a bankruptcy case. Sedgwick in 1908 was domiciled in Newport, R. I. In March, 1910, he went to Lenox, Mass, and had himself registered as a voter there. He belonged to a family known as a Stockbridge or Lenox family. The court found that he "intended in entire good faith and with no ulterior motive whatever to establish his domicile there in 1910." He had visited Lenox "most of the years" since 1910, staying either with relatives or at the hotel. But his visits were, like the visits of the plaintiff and his family to Newport, "casual and of short duration." Unless the fact that the plaintiff in this case owns a substantial property in Newport differentiates this case from the Sedgwick Case—and I do not think it does—the material facts in the two cases are indistinguishable.

Judge Morton held that Sedgwick had no domicile in Lenox, saying:

"If domicile were only a matter of intent, I should have no hesitation in agreeing with the learned referee that domicile in Lenox was proved. But domicile is more than a mere matter of intention. It is a man's permanent home, as distinguished from transitory residences. Mitchell v. U. S., 21 Wall. 350, 352, 22 L. Ed. 584. A person cannot, simply by choosing and intending in

good faith to make a certain place his domicile, effect that result. The intent to change domicile is ineffective, unless supported by adequate facts; there must be an actual removal animo manendi. 'The change cannot be made, except facto et animo. Both alike are necessary. Either without the other is insufficient.' White, J., Sun Printing Co. v. Edwards, 194 U. S. 383, 24 Sup. Ct. 696, 48 L. Ed. 1027. Citizenship as between the various states depends upon domicile; and there are many decisions holding with some strictness that a bona fide intention to become a citizen of another state failed because the facts were not sufficient to carry it out. See Simpson v. Phillipsdale Co. (D. C. Mass. Jan. 5, 1915), 223 Fed. 661."

I think this statement of the law accords with sound principle and with the great weight of the authorities.

Concurring in these views, I am constrained to hold that the plaintiff in this case had not, at the times in question, changed his domicile from Hamilton, Mass., to Newport, R. I.

The bills must be dismissed, with costs.