WILLIAM W. MITCHELL, Appellant, v. DELAWARE STATE TAX COMMISSIONER, Appellee.

(*February* 14, 1945.)

LAYTON, C. J., RODNEY and TERRY, J. J., sitting.

*Vincent A. Theisen* for the appellant.

*William H. Bennethum* for the appellee.

Superior Court for New Castle County, November Term, 1944.

LAYTON, Chief Justice:

The appellant petitioned the Tax Commissioner to be relieved from the payment of the State Income Tax for the taxable year 1940, on the ground that he was not a resident of Delaware at any time during that year. The prayer of the petition was denied, and after a formal hearing before the Tax Board the ruling of the Commissioner was affirmed. This appeal is pursuant to Rule 86b of this Court.

There is little or no dispute as to the facts. The appellant was born in California in 1903, and about one year later was brought by his parents to Delaware. He attended the local public schools, and, undoubtedly, became domiciled in this State. In 1924, he left Delaware to enter the Forestry School of the University of Idaho, with no intention, as he says, of returning to this State; but while a student at the Idaho University he filed a Civil Service application for employment in the United States Forestry Service in which he stated his legal residence to be in Delaware. The application, as filed, was never altered for the reason, as it was al-

leged, that the appellant did not want to lose his Civil Service priority. On graduation in 1928, the appellant asserts that he had no intention of returning to Delaware permanently to remain, but because of poor health he did return and remained here convalescing until the Fall of 1931. He then obtained employment as a fireman in the State of Pennsylvania, and remained in that employment until December 31, 1933, when he accepted a position in the United States Forestry Service. These facts were offered evidently in an effort to show that the appellant had abandoned his domicile in Delaware as early as 1924 when he left to attend the University of Idaho. During this time, and until after 1940, the appellant's mother maintained a home in Wilmington which he visited with some frequency. There is nothing in the record to show that the appellant acquired a domicile in Idaho, Pennsylvania, or elsewhere, and under the familiar rule that a domicile once established continues until it is superseded by a new one, he remained domiciled in Delaware.

The appellant's position in the Forestry Department was non-political, being under the rules of the Civil Service, permanent in character in line with the appellant's chosen profession, and meant a considerable advancement to him. The duties required his constant presence in Washington and on January 1, 1934, he removed to that city and has since lived there in the same apartment house and in the same employment. He rented an unfurnished apartment and furnished it completely with furnishings bought in Washington. He had transferred his church membership in Wilmington to a Washington Church, and became a member of several social organizations connected with the church. He opened and maintained banking and purchasing accounts in the city, and contributed to the Washington Community Chest Fund and other local churches. He described himself as being of Washington in a will made in 1938. He paid personal property taxes in the District of Columbia in the years 1937, 1938 and 1939; and in 1940 he registered with the Se-

lective Service in Washington. In March, 1939, the United States Supreme Court held that salaries of federal employees were taxable by the states of their residence. *State Tax Commission of Utah v. Van Cott*, 306 *U. S.* 511, 59 *S. Ct.* 605, 83 *L. Ed.* 950. The appellant asserts that the decision created much confusion among the federal employees in the District of Columbia, and being uncertain of his status, he, while on a visit to Delaware, filed a Delaware income tax return for the year 1939, and paid the tax. Shortly after he filed a District of Columbia income tax return for the same year, and paid the tax also. It appears that he resisted the right of the District to charge him with liability for income taxes in 1939 and 1940 on the ground that he was domiciled in Delaware, but without avail; and in April 1941, he filed a District of Columbia income tax return and paid a tax on the income which he had earned during the year 1940, no part of which was derived from any source in Delaware. The appellant voted at elections in Delaware from 1933 to and including the general election held in November, 1940. His explanation of his voting in this State in 1940 was that he desired to vote at the presidential election, and there being no elective franchise in the District of Columbia, he presented the facts of his case to a Delaware Registration Board while in Wilmington on a visit, was permitted to register as a qualified voter, and subsequently did vote at the election. At an informal hearing before the Delaware State Tax Board in October, 1940, he claimed Delaware as his residence for Civil Service and voting purposes, advanced the same claim of status in a letter to the Tax Commissioner in February, 1942, and it was not until November of that year that he formally renounced his claim of residence in Delaware for all purposes.

 Section 2 of Article V of the Constitution of Delaware provides that no one is entitled to vote at a general election held in this State unless he has been a resident of the State for one year next preceding the election; and 144,

Sec. 110 (b) of the *Revised Code of* 1935, as amended by *Chapter* 61, *Volume* 42, *Delaware Laws,* defines the word "taxable" for income tax purposes as meaning "A natural person twenty-one years of age or over, who is a resident of the State of Delaware or who has been a resident of the State of Delaware at any time during the income year." In the constitutional provision and in the statute the word "resident" is synonymous with the legal term "domiciled." 1 *Beale, Confl. Laws,* 111, 112.

The ruling of the State Tax Board was based on the view that the appellant had failed to sustain the burden of proving a change of domicil from Delaware to the city of Washington having regard for his asserted claim of residence in this State for Civil Service and voting purposes, and his actually voting here in 1940. A consideration of the law of domicil is made necessary.

In *New York Trust Co. v. Riley,* (*Del. Sup.*) 16 A. 2d 772, 783 (affirmed, 315 *U. S.* 343, 62 *S. Ct.* 608, 86 *L. Ed.* 885), the essentials of domicil of choice were said to be: "the fact of physical presence at a dwelling place and the intention to make that place home. There must be a concurrence of fact and intent. * * * There must be an actual abandonment of the first domicile coupled with an intention not to return to it, and the acquisition of a new domicile by actual residence in another place with the intention of making that place a permanent home. Whether one has changed his domicile from one place to another must depend largely on his intention. The intention must be of permanent or indefinite living at a given place, not for mere temporary or special purposes, but with a present intention of making that place home unless or until something uncertain or unexpected shall induce the adoption of some other permanent home; or, negatively expressed, there must be an absence of any present intention of not residing at the place permanently or for an indefinite time. It follows that absence

from one's place of residence, even for a long time on business, pleasure, reasons of health, education of children, or other special purpose, will not effect a change of domicile if, all the while, the person intends to be absent only for the accomplishment of the temporary purpose and to return to his former place of residence upon the fulfillment of the purpose. The intention to return must, of course, be fixed, certain and constant. A loose, indefinite, or as it is called, a floating intention to return will not avail to prevent a change of domicile. Declarations of intention or purpose are, of course, admissible, but they must give way to definite and unequivocal acts and conduct.".

It is axiomatic that every one must have a domicil, and that no one can have more than one domicil at the same time. It follows that a domicil once established is not abandoned until a new one is acquired by the combination of physical presence at the new place coupled with the intention to make that place home. Residence at a place and the intent to live there permanently or indefinitely constitute domicil, and when in point of time residence and intent concur, domicil follows as a legal consequence. The place of residence is prima facie the domicil, unless there is some motive for that residence not inconsistent with a clearly established intention to retain a permanent residence elsewhere. 17 *Am. Jur.* 638. A domicil once acquired is presumed to continue, and the burden of proving a change of domicil is on the person alleging it; but the presumption weakens with time, and residence elsewhere may rebut the presumption of continuance of domicil when it is of such length and in such circumstances as indicate an intention to adopt a new locality as a domicil.

Presence at a given place for the purpose of performing the duties of a civil office will not, of itself, effect a change of domicil. Any inference of animus manendi is explained by the fact of office holding. Neither is it a con-

clusive factor that the office is appointive and has a degree of permanence. 1 *Beale, supra,* 171. But the nature of the office may have great significance, as, for example, where the office or service is non-political, is continuous in nature and not merely emergent or special, offers a degree of financial security in its tenure and pay, and requires constant presence at a given place. *District of Columbia v. Murphy,* 314 *U. S.* 441, 62 *S. Ct.* 303, 86 *L. Ed.* 329.

The domicil of a person living in the District of Columbia in the performance of the duties of a position in the civilian service of the government is determinable by general principles. Such person does not necessarily surrender his state allegiance by removing to the District, establishing there a place of residence, and ceasing to maintain a residence in the state in which he had lived, for the evidence may be clear that all the while he had a fixed, definite and unconditional intention to return to his original domicil. Stated otherwise, one does not acquire a domicil in the District by going there to live for an indefinite period of time while in the government service. The question always is whether he has made the District his home; and if a person accepts a position in the civilian service of the government which requires his constant presence in the District, and there establishes a residence with the intention of making it a place of permanent or indefinite living and with no fixed, constant and unconditional intent to return to his former place of residence, domicil in the District follows as a matter of law. *District of Columbia v. Murphy, supra; Sweeney v. District of Columbia,* 72 *App. D. C.* 30, 113 F. 2d 25, 129 *A. L. R.* 1370; *Sparks v. Sparks,* 114 *Tenn.* 666, 88 *S. W.* 173.

The appellant's claim of residence in Delaware for civil service purposes furnished slender evidence of his intention to retain his domicil here. The payment of the State income tax for the year 1939 may be attributed to a

confusion of mind, and it is understandable that he resisted liability to income taxation in the District in an effort, as he says, to have his domiciliary status determined. At least there is nothing to suggest bad faith or ill purpose; and in the circumstances shown the fact is not of great importance in the determination of domicil. His statements as to residence were not that he claimed Delaware as his residence in the sense that his home was here, but only for the special purposes of civil service rating and voting; and what is of paramount importance is the entire absence of any expression of intention to return to this State and resume his residence here if for any reason his employment at Washington should terminate. It is clear that his habitation was fixed in Washington with no present intention of removing therefrom.

The case would hardly be arguable except for the fact that the appellant voted here in 1940. Knowledge of the constitutional requirement with respect to residence as a qualification for voting is, of course, imputed to him, and this admits of the argument that his voting here amounted to a solemn declaration that his domicil was here in that year. In *Shelton v. Tiffin*, 6 *How*. 163, 185, 12 *L. Ed.* 387, it was said by way of dictum that "an exercise of the right of suffrage is conclusive" on the question of domicil. Other judicial statements of like tenor may be found. See 107 *A. L. R.* 449. But the presumption that the place of suffrage is the place of domicil has lost strength, *Wharton, Confl. Laws* (3d ed.) 137; and by the great weight of authority voting at a place while, highly relevant, is not conclusive as to domicil. The vote may have been without right and fraudulent, or through mistake on the part of the voter, or through error or laxity on the part of the election authorities. *District of Columbia v. Murphy, supra; Inhabitants of East Livermore v. Farmington*, 74 *Me*. 154. Fraud will not be presumed. The opinion is more or less current that a good deal of latitude is allowed in choosing a place as the "resi-

dence" where one may vote, 1 *Beale, supra,* 113, and that in all circumstances one may retain the State of his former residence for voting purposes if his service in the government requires him to live in the District of Columbia where the right of suffrage is withheld. There is no legal warrant for this opinion. The right to register and vote depends upon an actual and not an imaginary residence. One cannot retain or obtain a domicil apart from his actual home for the purpose of voting. Stated otherwise, the mere desire to keep a "legal residence" for voting purposes avails nothing; and the intention of returning to the old place of domicil for the purpose of voting and the desire to retain the right to vote do not prevent a change of domicil to the new home. 1 *Beale, supra,* 143, 150. See *Agassiz v. Tefry, (D. C.)* 260 *F.* 226, 233. A man's home is where he makes it, not where he would like to have it. 17 *Am. Jur.* 605.

The appellant, without question, desired to keep Delaware as his residence for voting purposes; and, as clearly, he intended to keep on living in Washington as he had lived for several years, there to make his actual headquarters permanently or indefinitely, with no fixed and constant intent to return to Delaware to live. What he did not intend was that the facts should have their inevitable legal consequence, forgetting, if he ever knew, that when the facts are intended to which the law attaches a consequence, the consequence, although unintended and not desired, must be accepted. He could not have his actual home in Washington, and by the simple means of intending, retain advantages inconsistent with it. *Dickinson v. Brookline,* 181 *Mass.* 195, 63 *N. E.* 331, 92 *Am. St. Rep.* 407.

The conclusion of the Tax Board, in form of expression, was rested on the theory that the appellant failed to sustain the burden of proving a change of domicil, but implicit in the opinion is the thought that, having voted here in 1940, he was precluded from denying his domicil to be

here in that year. No principle in the nature of estoppel is applicable. The appellant is entitled to the benefit of the law despite his errors. He was not a resident of this State at any time during the year 1940, and was not subject to income taxation for that year.

The decision of the State Tax Board is reversed, and the cause is remanded for such action as may be necessary in conformity herewith.