## MATILDA A. SHAW *vs.* AMOS SHAW.

If the legal domicil of one of the parties to a libel for divorce, who lived together as husband and wife in this state before the time when the alleged cause of divorce occurred in another state, remained at that time within this jurisdiction, that is sufficient to satisfy the provision of the Gen. Sts. c. 107, § 12, that in order to enable the divorce to be decreed one of the parties must have been living in this state when the cause occurred.

A husband and wife, whose domicil was in Massachusetts, started to go to Colorado to reside. In Pennsylvania, on the journey, he treated her with extreme cruelty, and she left him there and returned to Massachusetts, where she continued to reside; but he never returned to Massachusetts. *Held*, that she might maintain here a libel for divorce for the cause which occurred in Pennsylvania.

LIBEL for divorce from bed and board for extreme cruelty of the husband. The libellee was defaulted; and, at the hearing before *Wells*, J., the allegations of the libel were proved to the satisfaction of the judge, who reserved the case for determina

tion by the full court of the question of jurisdiction arising on the following facts:

The parties were married April 12, 1866, at Rockport, and came immediately to Boston, where they resided together until about September 1. At this time the libellee decided to go to the territory of Colorado, to reside, and started, with his wife, on the journey. On the way they went to Philadelphia, in Pennsylvania, to enable him to complete some matters of business, and were detained there temporarily till January, 1867, when the libellant, on account of his extreme cruelty and through fear for her life, as he had threatened to kill her, left him, and returned to her home in Boston. The libellee never returned to this state. The acts of cruelty complained of were committed after the parties left Boston, and while so residing together temporarily at Philadelphia.

*J. Nickerson,* for the libellant.

FOSTER, J. The jurisdiction of this court to decree divorces is created by statute, and, except when the libellant has resided in this state five consecutive years next preceding the time of filing the libel, " no divorce can be granted for any cause occurring in any other state or country unless before such cause occurred the parties had lived together as husband and wife in this state and one of them lived in this state when the cause occurred." Gen. Sts. *c.* 107, §§ 11, 12. The words to live and to reside, in these provisions, are obviously synonymous, and both relate to the domicil of the party or the place where he is deemed in law to reside, which is not always the place of one's present actual abode. To live, to reside, to dwell, to have one's home or domicil, are usually, in our statutes, equivalent and convertible terms. *Opinion of the Justices,* 5 Met. 587. *Collester* v. *Hailey,* 6 Gray, 517. *Worcester* v. *Wilbraham,* 13 Gray, 586. For the purposes of divorce the general rule of jurisprudence is that a divorce granted in the place of the domicil of both parties, and there valid, is good everywhere. *Clark* v. *Clark,* 8 Cush. 385. And we are clearly of the opinion that the requirement of living in this state when the cause of divorce occurred is satisfied if the legal domicil of the party at that time remained within this jurisdiction.

Every one must have a domicil somewhere, and a domici. once existing cannot be lost by mere abandonment even when coupled with the intent to acquire a new one, but continues until a new one is in fact gained. *Abington* v. *North Bridge-water*, 23 Pick. 170. *Thorndike* v. *Boston*, 1 Met. 242. In the latest case on the subject in the house of lords, decided in May, 1868, Lord Chancellor Cairns said that " the law is beyond all doubt clear with regard to the domicil of birth, that the personal *status* indicated by that term clings and adheres to the subject of it until an actual change is made by which the personal *status* of another domicil is acquired." *Bell* v. *Kennedy*, Law Rep. 3 H. L. 307.

The former domicil remains until both the intent and fact of change of actual residence to another place have concurred to establish a new domicil there. The rule that one who has left this Commonwealth with the intention never to return here to reside is no longer a taxable inhabitant of Massachusetts, even if he has not yet acquired a new domicil in another state or country, is not in conflict with the principles which we have stated, but depends upon different language in the statutes, and upon a different class of considerations. It is such an exception to the ordinary rule of construction as ought not to be extended. *Colton* v. *Longmeadow*, 12 Allen, 598.

The parties to the present libel were married in Massachusetts and resided here until they determined to go to live in Colorado; and, on their way to their future intended home in that territory, they were sojourning temporarily at Philadelphia when the acts of cruelty were committed which constitute the alleged cause of divorce. At that point of time the domicil of both parties remained in this Commonwealth. They could not have acquired a domicil in a new jurisdiction which they had never reached. There existed an intent to acquire a domicil in Colorado, but the concurrent fact of actual residence there was equally indispensable to a change of domicil, and is wholly wanting. They had no claim to a domicil in Philadelphia, where they were only commorant for a temporary purpose, tarrying *in itinere* without any design of making it their home. There is no au-

thority for saying that a former domicil can be lost while one is *in transitu* and before he has arrived at another place in which he intends to establish nimself. *Bell* v. *Kennedy*, Law Rep. 3 H. L. 323.

In Philadelphia, in consequence of the husband's cruelty, the wife abandoned him and returned to Massachusetts, where she has ever since resided. The husband never came back to this Commonwealth. After the *delictum* was committed by the husband which caused the wife to separate herself from him and justified her in doing so, no subsequently acquired domicil of his could draw after it hers and change it so as to deprive the courts of Massachusetts of their jurisdiction to grant a divorce for an offence committed while the domicil of both remained in this Commonwealth. Nor is the circumstance that the acts of cruelty were committed out of this jurisdiction of any consequence. *Harteau* v. *Harteau*, 14 Pick. 181. *Brett* v. *Brett*, 5 Met. 233. *Barber* v. *Barber*, 21 How. 582. *Yelverton* v. *Yelverton*, 1 Swab. & Trist. 574. 2 Bishop Mar. & Div. *c.* ix.

*Divorce decreed.*