MELANCTHON W. BORLAND *vs.* CITY OF BOSTON.

Essex.   Nov. 4, 1880; Feb. 25; Sept. 6, 1881. — Jan. 4, 1882.

It is no objection to the sufficiency of a written protest by a tax-payer against the payment of a tax, under the Gen. Sts. *c.* 12, § 56, that it was presented to the collector; that it was written across the face of the tax-bill; and that it was not left with the collector, but was taken away by the tax-payer.

A person, having his domicil in Boston, left that city in 1876 with his family to reside in Europe for an indefinite length of time, with the fixed purpose never to return to Boston as a place of residence, and to make some place other than Boston his residence when he should return; and, while in Europe, before May 1, 1877, fixed upon a place of residence in another State, but remained in Europe until 1879. *Held*, that he retained his domicil in Boston for the purposes of taxation on May 1, 1877.

CONTRACT to recover the amount of a tax assessed by the defendant city upon the poll and personal property of the plaintiff, on May 1, 1877, and alleged to have been paid by him under a protest in writing. At the trial in the Superior Court, before *Aldrich*, J., the jury returned a verdict for the plaintiff; and the defendant alleged exceptions, which appear in the opinion.

The case was argued at the bar in November 1880; and was afterwards submitted on briefs to all the judges.

*E. P. Nettleton*, for the defendant.

*S. B. Ives, Jr. & S. Lincoln*, for the plaintiff.

LORD, J.   In this case, two questions are presented for our decision: first, Was the tax paid under such a protest in writing as to entitle the plaintiff to recover it back if it had been illegally assessed? and, second, Were the instructions of the presiding judge upon the matter of a change of domicil correct?

The Gen. Sts. *c.* 12, § 56, provide that "no tax paid to a collector shall be recovered back, unless it appears that it was paid after an arrest of the person paying it, a levy upon his goods, a notice of sale of his real estate, or a protest by him in writing." In the case at bar, the question arises upon the last branch of this provision, namely, whether the tax was paid after a protest in writing. The case finds that before the tax was paid there was written across the face of a tax-bill, which tax-bill was in the

usual form, these words: " Both items of this tax are paid under protest, M. Woolsey Borland not being on May 1, 1877, an inhabitant of Boston, nor then having any personal property or income there taxable, and said taxes having been illegally assessed. Boston, April 1st, 1878. M. W. Borland by J. Nelson Borland, Atty."

No objection is made because of the fact that the protest is signed by attorney, nor is any question made of the authority of the attorney, so that it is to be considered as if signed and presented in person by the plaintiff under the same circumstances in which it was actually presented.

Three objections are made to the sufficiency of this as a written protest: First, that it does not appear to have been presented to a proper officer of the city. Second, that it was not, in and of itself, a separate and independent document with such formalities as would attract the attention of the proper officer who should receive it. Third, that it was not left with an officer of the city, but was taken away by the protesting party.

As to the first of the objections, it is said that " the statute requires the delivery of the protest relied upon to some executive or other officer of the city or town." The counsel for the defendant does not, however, designate the officer to whom he contends that it should be delivered; nor does the statute, in express words. Inasmuch as the statute does not state the officer to whom the protest is to be made, we think that by its language there is a strong implication that the protest should be made to the collector, and that, whether a protest made to a different officer would be sufficient or not, a protest properly made by the tax-payer to the collector is sufficient. The language of the statute is, " no tax paid to a collector shall be recovered back, unless it appears that it was paid after . . . . a protest by him in writing." The various other conditions, such as arrest of person, notice of sale of land for nonpayment, or levy upon his goods, must all be within the knowledge and under the direction of the collector, and not necessarily within the knowledge of any other officer of the city; so that the notice given to the collector would place him and the city in the same relation to the subject of knowledge of protest as to every other of the conditions upon which money could be

recovered back. A protest in writing to the collector is therefore enough.

Secondly, it is said that the protest which the law requires is a formal, separate and independent document. But the tax-bill by which the tax-payer knows that a tax has been assessed upon his poll and his estate comes from the collector, and the amount of it is to be paid to the collector. It would therefore seem that, to insure certainty and identity, the particular tax-bill which makes claim of the payment of the illegal tax may properly be called to the attention of the collector as identifying the illegal tax; and a protest being written upon it, and as in this case stating "this tax," seems calculated to give more direct, immediate and accurate information of the tax-payer's claim than could be derived from any separate and independent protest, however formal and carefully prepared.

The objection also suggested, that, in the haste of the receipt of taxes by the collector, a protest across the face of the instrument might not be observed by him, applies in our judgment with equal force to any other omission of duty in the collector, like the failure to preserve a separate paper handed to him by the tax-payer immediately before the presentation of his tax-bill and money for the collector's receipt. Indeed, it seems scarcely possible that a collector should take a tax-bill into his hands for the purpose of affixing his own signature to it, and actually affix his signature, without observing the writing across the face of his printed bill. But if it were true that the collector would be less likely to take notice of the protest thus presented, than if it had been presented in some other form, it would be no objection to its sufficiency.

The remaining objection is an objection arising from the fault of the defendant, rather than from that of the plaintiff. The tax-payer has done his whole duty when he has made and presented to the collector a protest in writing against the tax. He cannot be responsible for the disposition of that protest by the officer. The officer may wilfully destroy it. The tax-payer cannot be responsible for that. The collector may carelessly lose possession of it, or he may negligently put it in the wrong place, or deliver it to a wrong person. None of these contingencies can affect the validity of the protest, nor does it make

any difference that he carelessly or negligently delivered it to the tax-payer himself. It does not appear that the tax-payer in this case had any agency in causing it to be redelivered to him; nor do we see how in any mode, in the absence of fraud, any dealing with the protest by the collector after he has received the protest in writing, or by the tax-payer after he has performed his whole duty by delivering it to the officer, can affect the rights of the parties.

In the opinion of a majority of the court, the protest offered was rightly admitted in evidence.

The other question raised is upon the correctness of the instructions of the presiding judge upon the question of domicil.

The evidence tended to show that the plaintiff was born in Boston in 1824, and had lived there until June 1876, when he sailed for Europe with his family. He testified that when he left Boston he had definitely formed the intention of not returning to Boston as a resident; that in the fall of 1876 he had decided to make Waterford, Connecticut, his residence, and then formed the intention of purchasing land there, which he bought on May 28, 1877; and that he remained in Europe until 1879, when he returned to this country, and went to Waterford. On this evidence, the judge instructed the jury, "that a citizen, by the laws of this Commonwealth, must have a home or domicil somewhere on the first day of May for the purpose of taxation; that in order to change such home or domicil, once acquired, and acquire a new one, the intention to make the change and the fact must concur; that if the plaintiff, with no definite plan as to the length of time he should remain abroad, and no definite purpose about a change of domicil, went to Europe with his family, that would not effect a change of his domicil from Boston, and he would remain liable to taxation there; but that if he left Boston in 1876 with his family to reside in Europe for an indefinite length of time, with the fixed purpose never to return to Boston again as a place of residence, and with the fixed purpose of making some place other than Boston his residence whenever he should return to the United States, and had in his mind fixed upon such place of residence before May 1, 1877, and remained in Europe until after that time, he was not liable to this tax as an inhabitant

of Boston on the first of May of that year; that whether he had done enough to make Waterford his home or not, was not essential in this case, — if he had lost his home in or ceased to be an inhabitant of Boston at the time, he was not taxable there."

Certainly, the latter part of this instruction would be understood to be in conflict with the former; for, not referring now to the words used by the judge, the obvious meaning of the whole sentence is, first, to instruct the jury that a man once having a home here is taxable here until both the purpose to change his home and the fact of changing his home concur; and afterwards to instruct them that, if his intention to make another place his home is formed after he leaves this country, and before the first of May, such intention removes his liability to taxation, even although the fact of change does not concur with the intention. Although there is this obvious inconsistency, it arises partly from inherent difficulties in the case, partly from the impossibility of stating a fixed rule which shall be applicable to all cases, under the infinite variety of circumstances attending them, and the various adjudications which have been made upon the subject. The source of the difficulty is in the use of words of exactly, or substantially, or partially, the same signification, but at different times used with different significations.

There are certain words which have fixed and definite significations. "Domicil" is one such word; and for the ordinary purposes of citizenship, there are rules of general, if not universal acceptation, applicable to it. "Citizenship," "habitancy" and "residence" are severally words which may in the particular case mean precisely the same as "domicil," but very frequently they may have other and inconsistent meanings; and while in one use of language the expressions a change of domicil, of citizenship, of habitancy, of residence, are necessarily identical or synonymous, in a different use of language they import different ideas. The statutes of this Commonwealth render liable to taxation in a particular municipality those who are inhabitants of that municipality on the first day of May of the year. Gen. Sts. *c.* 11, §§ 6, 12. It becomes important, therefore, to determine who are inhabitants, and what constitutes habitancy.

The only case adjudged within this Commonwealth, in which the word of the statute, "inhabitant," is construed to mean something else than "being domiciled in," is *Briggs* v. *Rochester*, 16 Gray, 337, although that decision is subsequently recognized in *Colton* v. *Longmeadow*, 12 Allen, 598. In *Briggs* v. *Rochester*, Mr. Justice Metcalf, in speaking of the word "inhabitant," says that it has not the meaning of the word "domicil" "in its strictly technical sense, and with its legal incidents." He says also that the word "domicil" is not in the Constitution nor in the statutes of the Commonwealth. So far as the Constitution is concerned, this is correct, but he had evidently overlooked a statute of ten years before, in which the word "domicil" was used, and upon the very subject of taxation, in a proviso in these words : " Provided that nothing herein contained shall exempt said person from his liability to the payment of any tax legally assessed upon him in the town of his legal domicil." St. 1850, *c.* 276. Gen. Sts. *c.* 11, § 7. This language is a strong legislative assertion that domicil is the test of liability to taxation ; and in an opinion given by the justices of this court to the House of Representatives in 1843, in reference to a student's right to vote in the municipality in which he is residing for the purposes of education, it was said, " And as liability to taxation for personal property depends on domicil." 5 Met. 587, 590.

Nor do we think that the opinion in *Briggs* v. *Rochester* gives the true force as used in the Constitution of the word "inhabitant ; " for we cannot doubt that for the purposes of taxation the word "inhabitant" must be used in the same sense as when used in reference to electing and being elected to office ; especially as at that time the payment of a tax duly assessed was one of the qualifications of an elector ; and more especially as the Constitution itself professes to give its definition of "inhabitant" for the purpose of removing all doubt as to its meaning. Its language is, " And to remove all doubts concerning the meaning of the word 'inhabitant' in this Constitution, every person shall be considered as an inhabitant, for the purpose of electing and being elected into any office, or place within this State, in that town, district or plantation where he dwelleth, or hath his home." Const. Mass. *c.* 1, § 2, art. 2.

Nor do we see how the construction given to the statute is consistent with the result at which the court arrived. The learned judge says, " In the statute on which this case depends, we are of opinion that the words ' where he shall be an inhabitant on the first day of May,' mean where he shall have his home on that day." It is therefore clear that the learned judge does not give to the word " inhabitant " the meaning which the construction of the statute before referred to authorizes him to give, but he does give the exact definition of the Constitution, to wit, " where he dwelleth, or hath his home ; " for these words have not in the Constitution two meanings, but the single signification given to them by the learned judge, " his home," the exact, strict, technical definition of domicil.

We cannot construe the statute to mean anything else than " being domiciled in." A man need not be a resident anywhere. He must have a domicil. He cannot abandon, surrender or lose his domicil, until another is acquired. A cosmopolite, or a wanderer up and down the earth, has no residence, though he must have a domicil. It surely was not the purpose of the Legislature to allow a man to abandon his home, go into another State, and then return to this Commonwealth, reside in different towns, board in different houses, public or private, with no intention of making any place a place of residence or home, and thus avoid taxation. Such a construction of the law would create at once a large migratory population.

Although we have said that the case of *Briggs* v. *Rochester* has been recognized in *Colton* v. *Longmeadow,* 12 Allen, 598, yet we ought to state that the decision in *Colton* v. *Longmeadow* was placed upon entirely different grounds. It was there held that the plaintiff had lost his domicil in Massachusetts because he had actually left the Commonwealth, and was actually *in itinere* to his new domicil, which he had left this Commonwealth for the purpose of obtaining, and which in fact he did obtain. If it should be deemed sound to hold that a person, who, before the first of May, with an intention in good faith to leave this State as a residence and to adopt as his home or domicil another place, is in good faith and with reasonable diligence pursuing his way to that place, is not taxable here upon the first of May, the doctrine should be limited

strictly to cases falling within these facts. And both of the cases cited, *Briggs* v. *Rochester* and *Colton* v. *Longmeadow*, would fall within the rule. In each of those cases, the plaintiff had determined, before starting upon his removal, not only upon his removal, but upon his exact destination, and in fact established himself, according to his purpose, without delay, and within a reasonable time.

We think, however, that the sounder and wiser rule is to make taxation dependent upon domicil. Perhaps the most important reason for this rule is, that it makes the standard certain. Another reason is, that it is according to the general views and traditions of our people.

One cannot but be impressed by certain peculiarities in *Briggs* v. *Rochester*. The bill of exceptions in that case begins thus: "It was admitted by both parties and so presented to the jury, that the only question at issue was the domicil of the plaintiff on the first of May, 1858; and that if he was then an inhabitant of the defendant town, the tax was rightly imposed; but that if he was not on that day an inhabitant of said town, he was not then rightly taxable and taxed therein." Nothing can be more clear than that all parties understood, and the case was tried upon the understanding, that domicil and inhabitancy meant the same thing; otherwise, domicil, instead of being "the only question at issue," would not have been in issue at all. And the judge in giving his opinion says that, if domicil in its strictly technical sense, and with its legal incidents, was the controlling fact, the plaintiff was rightly taxed in Rochester.

Another noticeable fact in *Briggs* v. *Rochester* is this, that if the tax-payer in the pursuit of his purpose is beyond the line of the State before the first of May, he is not liable to taxation in the State; but if by detention he does not cross the line of the State till the first of May, he is taxable here. We cannot adopt a rule which shall make liability to taxation depend upon proximity to a state line.

We have said that we prefer the test of domicil, because of its certainty and because of its conformity to the views and traditions of our people, and, we may add, more in accordance with the various adjudications upon the subject in this State,

and more in accord with the general legal and judicial current of thought. It is true, that, as said by Mr. Justice Metcalf, "it has repeatedly been said by this and other courts, that the terms 'domicil,' 'inhabitancy' and 'residence' have not precisely the same meaning." But it will be found upon examination that these three words are often used as substantially signifying the same thing.

In one of the earliest cases, *Harvard College* v. *Gore*, 5 Pick. 370, 377, Chief Justice Parker, in defining the word "inhabitant" as used in the laws, defined it as one which imported not only . domicil, but something more than domicil. "It imports citizenship and municipal relations, whereas a man may have a domicil in a country to which he is an alien, and where he has no political relations. . . . . An inhabitant, by our Constitution and laws, is one who being a citizen dwells or has his home in some particular town, where he has municipal rights and duties, and is subject to particular burdens; and this habitancy may exist or continue notwithstanding an actual residence in another town or another country." There are other passages in the same opinion which, although used *alio intuitu*, yet clearly indicate the current of judicial thought; for example, "The term 'inhabitant' imports many privileges and duties which aliens cannot enjoy or be subject to;" p. 373; "does not fix his domicil or habitancy;" p. 372; "a pretended change of domicil to avoid his taxes;" p. 378. There are other similar expressions running through the whole opinion.

In *Lyman* v. *Fiske*, 17 Pick. 231, the views of Chief Justice Parker in *Harvard College* v. *Gore* were considered by Chief Justice Shaw; and although expressing no dissent from the views of Chief Justice Parker, it is evident that in his apprehension the word "inhabitant" as used in the Constitution imported one domiciled, and he did not deem it important to consider whether it imported anything else in relation to political rights, duties and liabilities than the word "domiciled" would import. But as the views of that magistrate are never to be slightly regarded, and as he gave the opinion in both the cases decided by this court, cited by Mr. Justice Metcalf as settling that the words "domicil," "habitancy" and "residence" have not precisely the same meaning, we cite from his

opinion to show what his views were of "domicil" and "habitancy." "In some respects, perhaps, there is a distinction between habitancy and domicil, as pointed out in the case of *Harvard College* v. *Gore*, 5 Pick. 377, the former being held to include citizenship and municipal relations. But this distinction is believed to be of no importance in the present case; because all the facts and circumstances, which would tend to fix the domicil, would alike tend to establish the habitancy. It is difficult to give an exact definition of 'habitancy.' In general terms, one may be designated as an inhabitant of that place, which constitutes the principal seat of his residence, of his business, pursuits, connections, attachments, and of his political and municipal relations. It is manifest, therefore, that it embraces the fact of residence at a place, with the intent to regard it and make it his home. The act and intent must concur, and the intent may be inferred from declarations and conduct."

It is entirely clear that in his opinion, so far as relates to municipal rights, privileges, and duties, there is substantially no distinction between "domicil" and "habitancy." And, as further illustrating the views of that magistrate and the general sentiment of our people as to the use of such language in legislative enactments, we cite his language in *Abington* v. *North Bridgewater*, 23 Pick. 170, 176: "In the several provincial statutes of 1692, 1701 and 1767, upon this subject, the terms 'coming to sojourn or dwell,' 'being an inhabitant,' 'residing and continuing one's residence,' 'coming to reside and dwell,' are frequently and variously used, and, we think, they are used indiscriminately, and all mean the same thing, namely, to designate the place of a person's domicil. This is defined in the Constitution, *c.* 1, § 2, for another purpose, to be the place 'where one dwelleth, or hath his home.'"

Authorities could be multiplied almost indefinitely in which it has been held by this court that, so far as it relates to municipal rights, privileges, powers or duties, the word "inhabitant" is, with the exceptions before referred to, universally used as signifying precisely the same as one domiciled. See *Thorndike* v. *Boston*, 1 Met. 242, 245; *Sears* v. *Boston*, 1 Met. 250, 252; *Blanchard* v. *Stearns*, 5 Met. 298, 304; *Otis* v. *Boston*, 12 Cush. 44, 49; *Bulkley* v. *Williamstown*, 3 Gray, 493, 494.

As illustrative, however, of the fact that domicil and habitancy are, for the ordinary purposes of citizenship, such as voting, liability to taxation and the like, identical, and that when they are susceptible of different meanings they are used *alio intuitu*, we cite the language of Chief Justice Shaw in *Otis* v. *Boston*, 12 Cush. 44, 49 : " Perhaps this question has heretofore been somewhat complicated, by going into the niceties and peculiarities of the law of domicil, taken in all its aspects ; and there probably may be cases where the law of domicil, connected with the subject of allegiance, and affecting one's national character, in regard to amity, hostility, and neutrality, is not applicable to this subject. But as a man is properly said to be an inhabitant where he dwelleth and hath his home, and is declared to be so by the Constitution, for the purpose of voting and being voted for ; and as one dwelleth and hath his home, as the name imports, where he has his domicil, most of the rules of the law of domicil apply to the question, where one is an inhabitant."

A very strong case of retention of domicil, while *in itinere* to a new one which is subsequently reached, is *Shaw* v. *Shaw*, 98 Mass. 158, in which the court say that the rule of *Colton* v. *Longmeadow*, which merely followed *Briggs* v. *Rochester*, " is such an exception to the ordinary rule of construction as ought not to be extended."

Upon the whole, therefore, we can have no doubt that the word " inhabitant " as used in our statutes when referring to liability to taxation, by an overwhelming preponderance of authority, means " one domiciled." While there must be inherent difficulties in the decisiveness of proofs of domicil, the test itself is a certain one; and inasmuch as every person by universal accord must have a domicil, either of birth or acquired, and can have but one, in the present state of society it would seem that not only would less wrong be done, but less inconvenience would be experienced, by making domicil the test of liability to taxation, than by the attempt to fix some other necessarily more doubtful criterion.

Whether the cases of *Briggs* v. *Rochester* and *Colton* v. *Longmeadow* should be followed in cases presenting precisely similar circumstances, the case at bar does not require us to

decide; and we reserve further expression of opinion on that question until it shall become necessary for actual adjudication. If they are to be deemed authority, they should certainly be limited to the exact facts, where a person before leaving this Commonwealth has fixed upon a place certain as his future home, and has determined to abandon this Commonwealth for the purpose of settling in his new home, and is, upon the first of May, without the Commonwealth, in good faith and with reasonable despatch actually upon his way to his new home. The plaintiff does not bring himself within this rule; for although he might have left the Commonwealth with the fixed purpose to abandon it as a residence, he did not leave it on his way to a place certain which he had determined upon as his future residence, and was proceeding to with due despatch; and, upon the general rule that, having had a domicil in this Commonwealth, he remains an inhabitant for the purpose of taxation until he has acquired a new domicil, the intention and fact had not concurred at the time when this tax was assessed. The instructions of the presiding judge, therefore, inasmuch as they were not based upon the rules here laid down, were not accurately fitted to the facts of the case, and the                                    *Exceptions must be sustained.*