TAX COLLECTOR OF LOWELL *vs.* FRANK HANCHETT.

Middlesex.   November 15, 1921.—March 3, 1922.

Present: RUGG, C. J., BRALEY, CROSBY, CARROLL, & JENNEY, JJ.

*Domicil. Tax,* Assessment. *Evidence,* Presumptions and burden of proof, Admission. *Agency. Municipal Corporations.*

Upon the hearing by a judge without a jury of an action by the collector of taxes of a city against one alleged to have been domiciled in that city on April 1, 1916, for personal property taxes assessed for that year, where the defendant contended that certain acts of his as to residence in a nearby town resulted in his being domiciled in the town and not in the city on that date, the judge found "that as to the intent of the defendant . . . in March, 1916, when he hired half of [a certain house in the town] . . . he intended to live in the manner in which he has actually lived since that time, and that, so far as consistent with so living, he intended to be an inhabitant of the town . . . and to acquire a domicil there, but that to live in the manner in which he has lived does not seem to me to amount in a real and just sense, to making [the town] . . . the defendant's home," and found for the plaintiff. Upon a report of the action to this court for determination, it was *held,* that in the circumstances the determination of the domicil of the defendant on April 1, 1916, was a question of fact; that the finding of the trial judge was warranted by the evidence and therefore that it should not be disturbed.

At the hearing of the action above described, evidence offered by the defendant that no assessment on his personal property was levied by the city on April 1, 1917, and on April 1, 1918, and that the assessors altered the sworn statement of the cashier of a bank as to the defendant's residence in 1916 and sent a copy of the altered statement to the tax commissioner, was excluded rightly, acts of the assessors, who were public officers, not binding the municipality as admissions and the evidence not being relevant as tending to show the defendant's

intention to change his domicil or that his actual place of abode had been changed at the date of the assessment in question.

CONTRACT by the collector of taxes of the city of Lowell to recover a personal property tax alleged to be due from the defendant for the year 1916. Writ dated March 30, 1918.

In the Superior Court, the action was heard by *Hammond, J.,* without a jury. Material evidence and the substance of requests for rulings are described in the opinion. The judge found "that as to the intent of the defendant in March, 1916, when he hired half of the Parker house [in Dunstable], he intended to live in the manner in which he has actually lived since that time, and that, so far as consistent with so living, he intended to be an inhabitant of the town of Dunstable and to acquire a domicil there, but that to live in the manner in which he has lived did not seem to me to amount in a real and just sense to making Dunstable the defendant's home." The judge found for the plaintiff in the sum of $9,283.17 with interest from the date of the writ and reported the action to this court for determination.

*R. O. Harris,* for the defendant.

*W. D. Regan,* for the plaintiff.

BRALEY, J. This is an action of contract by the collector of taxes of the city of Lowell to recover "$8,537.24, the amount of a tax . . . upon intangible personal estate . . . and $2 . . . poll tax assessed upon the defendant" for the fiscal year beginning "April 1, 1916." St. 1909, c. 490, Part II, § 33. St. 1914, c. 198, §1. The judge found for the plaintiff and at the defendant's request reported the case with all the material evidence, his conclusions of fact, and rulings, "for determination by the full court of the questions of law raised."

The material contention of the defendant appears in his seventh request, "That as matter of law upon all the evidence . . . the defendant was a legal resident of the town of Dunstable, Mass., on the first day of April, 1916." It was possible for him to have more than one home, or to be homeless if he so preferred, yet he could have only one domicil, for "Every person must have a domicil somewhere." *Abington* v. *North Bridgewater,* 23 Pick. 170, 177. *Borland* v. *Boston,* 132 Mass. 89, 99. His domicil of origin having been in Lowell, it continued there for the exercise of political privileges and for purposes of taxation, "until both

the intent and fact of change of actual residence to another place have concurred to establish a new domicil there." *Shaw* v. *Shaw,* 98 Mass. 158, 160. *Borland* v. *Boston,* 132 Mass. 89, 95. *Babcock* v. *Slater,* 212 Mass. 434, 436. The plaintiff's second request, that "The defendant's domicil having been in Lowell . . . for years prior to 1916 his domicil continued in Lowell until a new one was acquired," which the judge gave, correctly stated the law.

The judge on all the evidence was warranted in finding that the defendant in 1915 had formed an intention to leave Lowell, and accompanied by his wife visited several places, none of which were found to be acceptable. But, his attention having been called to Dunstable, a town about ten or twelve miles distant from Lowell where the rate of taxation was much less, he rented on March 1, 1916, half of a house in that town, and notified the assessors that he had taken up his residence in Dunstable where he desired to be assessed and have his name placed upon the voting list. On the same day he wrote to the assessors of Lowell what had taken place, and also requested a national bank in which he was a stockholder to change his legal residence on its books from Lowell to Dunstable. Between March 10 and March 20 he was at this house twice, as well as on March 23, 24 and 25, when he stayed over night. From March 27 to April 2 or 3 he remained there nights and had his meals. His wife and daughter, who composed his family, were visiting his son engaged in business in Akron, Ohio. Mrs. Hanchett on her return about April 10 or 20, ". . . visited the Dunstable house with the defendant, and selected some wall-papers, and did some work about the house, sweeping and preparing meals." The ceilings also were repaired, some papering and painting done in the spring of 1916, and electric lights were installed. The defendant voted in Dunstable at all elections after the annual March meeting in 1916. He was assessed and paid taxes for that year upon his personal property as well as a poll tax and participated in the municipal affairs of the town. During this period and on April 1, the defendant, a man of ample means, owned in Lowell a well furnished residence on Harvard Street of eleven or more rooms fully equipped with all modern conveniences, which on his own evidence had been the family home before his appearance in Dunstable. A garage for two automobiles also was on the premises. The Dunstable house with an

entrance in common, consisted of three rooms on the ground floor, a kitchen, dining room and living room, with two chambers on the second floor and an attic. The only bathroom was in the other half of the house occupied by the lessor, which the defendant had a right to use in common. While this half was heated by steam, stoves only could be used in the defendant's half, and, the house not being supplied with town water, the bathroom had to be furnished with water by a hot air pump. Mrs. Hanchett, who returned from Akron about April 10, 1916, spent the summer with her daughter on the "Maine coast." The defendant and his wife with the exception of the summer months, toward the last of April or first of May, 1916, would go back and forth between Lowell and Dunstable through the spring and fall of 1916 two or three times a week, stopping at Dunstable sometimes "the most of a week," at other times they "might not go" to Lowell for several days, returning "at some part of the day." The son died at, and the funeral services were held in the Lowell house, to which the defendant and his wife returned when they came back from Ohio where they went to settle the son's estate. It was to the Lowell home that Mrs. Hanchett also came after her first trip to Akron "as she always has done when returning from travelling, or from vacation trips." The defendant's unmarried daughter, being in delicate health and under the care of a physician in Boston to whom she made frequent visits, did not "wish to live in Dunstable." The defendant told her she could keep her residence at the Lowell house "until it should be sold." But even if some efforts were made to dispose of the property, it never was sold. The defendant, as chairman of the trustees of the "Lowell General Hospital" and as a director of the Union National Bank of Lowell, continued to discharge the duties of each office prior to and on and after April 1, 1916. He also in 1916 and during previous years had his only office for the transaction of business in a room set apart and furnished for that purpose in the Lowell house, and never removed his office to Dunstable. A man, a maid, and a caretaker, were always employed at the Lowell house "till the present time." It did not appear that servants were engaged at the Dunstable house, although "the man servant kept at the Lowell house was brought to Dunstable . . . when required which was not very often . . . to cut lawns, and to help clean and help repair."

The weight to be given to the declarations of the defendant, his acts and general conduct, as bearing upon, and tending to show an intention to abandon Lowell, and to make Dunstable his permanent residence were for the judge. "No exact definition can be given of domicil; it depends upon no one fact or combination of circumstances, but from the whole taken together it must be determined in each particular case. . . . It depends upon the preponderance of the evidence in favor of two or more places; and it may often occur, that the evidence of facts tending to establish the domicil in one place, would be entirely conclusive, were it not for the existence of facts and circumstances of a still more conclusive and decisive character, which fix it, beyond question, in another." *Thorndike* v. *Boston*, 1 Met. 242, 245, 246. The question of his domicil on April 1, 1916, was one of fact. *Thayer* v. *Boston*, 124 Mass. 132, 144. The judge was to determine whether the elaborate arrangements which have been described manifested an intention to establish a domicil other than in Lowell and if such purpose sufficiently appeared, whether there was an actual change of residence, or an ostensible change to escape from what he considered excessive taxation. *Dickinson* v. *Brookline*, 181 Mass. 195. *Babcock* v. *Slater*, 212 Mass. 434. *Emery* v. *Emery*, 218 Mass. 227, 228. *White* v. *Stowell*, 229 Mass. 594. "The intent and the act must concur, and until the intent was consummated by an actual removal of his home, no change of domicil was effected." *Bangs* v. *Brewster*, 111 Mass. 382, 385.

The evidence offered by the defendant that no assessment on his personal property was levied in Lowell on April 1, 1917, and on April 1, 1918, and that the assessors altered the sworn statement of the cashier of the bank as to the defendant's residence in 1916, and sent a copy of the altered statement to the tax commissioner, was excluded rightly. The assessors were public officers and their acts cannot be deemed as in the nature of admissions binding the plaintiff or as tending to show the defendant's intention to change his domicil or that his actual place of abode had been changed at the date of the assessment in question.

The judge's final conclusion that "the defendant's real home on April 1, 1916, was Lowell, and that he was accordingly domiciled there" cannot be held to have been unwarranted. *Harvard College* v. *Gore*, 5 Pick. 370, 377. The seventh request could not have

been given. The other requests in so far as not granted were denied rightly. The fourth asked for a finding or instruction that the only rational inference to be drawn from all that the plaintiff had said and done concerning his intention to go to the town of Dunstable and there take up his legal residence, "is that his domicil on the first of April, 1916, was in said town of Dunstable." It was a question of fact whether the change contended for had been wrought. The eighth, requesting a finding that on all the evidence the defendant had become a legal resident of Dunstable, also presented a question of fact and not of law. The ninth has already been dealt with in disposing of the question of the relevancy of evidence showing the action of the assessors in not assessing the defendant for the years 1917 and 1918. The defendant's domicil having been fixed in Lowell by the findings, the giving of the plaintiff's first request, that he was legally assessed as a resident of that city, shows no error of law. The entry must be judgment for the plaintiff in the sum of $9,283.17 with interest from the date of the writ.

*So ordered.*