## COMMONWEALTH *vs.* EDGAR B. DAVIS.

Suffolk.    November 16, 1932. — September 12, 1933.

Present: RUGG, C.J., CROSBY, PIERCE, & LUMMUS, JJ.

*Domicil. Tax*, On income. *Evidence*, Presumptions and burden of proof. *Practice, Civil*, Exceptions: amendment to bill.

Every one must have a domicil somewhere.
A domicil of origin is not lost until a new domicil is actually acquired.
In an action of contract by the Commonwealth to recover a tax on income received in a certain year by one who had always been domiciled here, the defendant in his answer alleged that he had been an inhabitant of another State since a date shortly before the end of that year; and it was *held*, that the burden of proving such change of domicil was on the defendant.
Ascertainment of the domicil of an individual is mainly a question of fact to be determined from all the evidence and circumstances.
The evidence in the action above described showed in substance that the domicil of the defendant, an unmarried man, had always been in a city in this Commonwealth where he had his family and social ties and charitable, public, financial and property interests; that, a few days before the end of the year in question, following conferences with the income tax officials of this Commonwealth and a notification

from them that certain of his income for the year in question would be taxed at a rate higher than that which he contended was proper, he went to a small town in Texas, in which State he had no relatives, and acquired from a friend a house with the understanding that the friend and his family might continue to live there; that he then gave sundry formal notices in the city and elsewhere in this Commonwealth to the effect that he had become a citizen of Texas, and thereafter for a time paid taxes and voted there; that he took with him to Texas only a few personal belongings; that he spent but little time in Texas and continued to be in the city and other places in this Commonwealth as much as he always had been; and that he made no change in his general mode of living and activities. *Held,* that it was for the jury to determine whether the defendant had a *bona fide* intention to change his home for the general purposes of life or whether he merely wished to make it appear that he had changed his residence in order to avoid the tax of this Commonwealth; and a finding, that he in fact had not changed his domicil, was warranted.

Although a party who presents a bill of exceptions for allowance is not barred, after the expiration of the time for filing exceptions, from clarifying by amendment of the bill exceptions which he has really included therein but which are imperfectly stated, the trial judge then has no power, against the objection of the opposing party, to allow the excepting party to add to the bill exceptions which were omitted entirely from it as originally filed.

In the circumstances, the assent of the opposing party to the insertion of certain additional facts in a bill of exceptions after the expiration of the time for filing exceptions did not give the excepting party a right further to amend the bill, over the objection of the opposing party, by adding matter raising certain questions of law omitted from the original bill.

CONTRACT. Writ dated July 20, 1928.

The action was tried in the Superior Court before *Thayer,* J. Material evidence is stated in the opinion. After the jury had answered a special question submitted to them, the judge ordered a verdict for the plaintiff in the sum of $439,537.97. The defendant alleged exceptions. His bill of exceptions is described in the opinion.

*W. F. Stephens,* (*R. W. Copeland* with him,) *& F. W. Murphy* of New York, for the defendant.

*A. W. Rockwood,* Special Assistant Attorney General, (*W. Flaherty,* Special Assistant Attorney General, with him,) for the Commonwealth.

RUGG, C.J. This is an action of contract to recover an income tax. G. L. (Ter. Ed.) c. 62, § 41. The plaintiff's declaration alleges that the defendant was a resident of

Brockton in this Commonwealth, that a tax of a specified sum has been assessed upon income received by him during 1926, that no part of it has been paid and that the entire amount is due with interest from October 1, 1927. The defendant's answer contains a general denial, denial that he has been an inhabitant of the Commonwealth since December 31, 1925, [1926] avers that he has been an inhabitant of the State of Texas since on or about December 21, 1926, and that the assessment of the income tax is in violation of his rights under the Constitution of this Commonwealth and under the Constitution of the United States.

The parties have stipulated for the purposes of this case that there has been compliance with all procedural requirements and formalities with respect to the assessment and collection of the tax in question and the bringing of the present action.

The parties have further stipulated with respect to the income on which the tax was laid that the defendant was the owner of one hundred eighty-three thousand out of the two hundred thousand shares of stock of the United North and South Oil Company, Inc., a New York corporation which owned oil leases on lands in Texas. In 1926 a sale of most of its property including oil leases was made to the Magnolia Petroleum Company, a subsidiary of the Standard Oil Company, for $12,100,000, one half of which was paid in cash and the balance later as the oil was taken out of the properties. The money was paid to the United North and South Oil Company, Inc., which was liquidated and dissolved. Dividends were paid to the defendant by the latter company during 1926 as follows: forty per cent in cash prior to the sale to the Magnolia Petroleum Company, three hundred per cent in cash after that sale, one hundred per cent in stock of the United North and South Development Company, Inc., a Delaware corporation, the capital stock of which was owned by the United North and South Oil Company, Inc., and the fair value of which at the time of its receipt by the defendant was its par value. The income tax was levied at the rate of six per cent on the

amounts thus received in cash and stock after deducting the par value of the stock owned by the defendant in the United North and South Oil Company, Inc.

The case was tried to a jury largely upon oral evidence, the testimony of the defendant being voluminous. The chief question for decision is whether there was error of law in the denial of the motion by the defendant that a verdict be directed in his favor. This is the only exception stated in the bill as allowed. No exception was taken to the charge by either party and all exceptions as to evidence were waived. At the close of the charge, this special question was submitted to the jury: "Did the defendant, Edgar B. Davis, change his domicile from Brockton, Massachusetts, to Luling, Texas, in fact?" The jury answered "No." Thereupon the trial judge directed a verdict for the plaintiff for the amount claimed in the declaration.

A main contention of the defendant is that there was no evidence to support the finding that the defendant did not change his domicil from this Commonwealth to Texas. It is conceded that the defendant's domicil was and continued to be in Brockton in this Commonwealth from his birth until some time in the latter part of December, 1926. The point in controversy is whether he then changed his domicil to Luling in the State of Texas. Relevant facts and testimony bearing on this point, summarily stated, are these: The defendant was born in 1873, was brought up and received his education in Brockton and never married. He was engaged in business there until 1904 when by reason of sickness he was compelled to give up all business activities. Thereafter he travelled extensively, was absent from Brockton a good deal of the time, but continued to look upon Brockton as his legal domicil and never contended prior to the latter part of December, 1926, that his home was not in the family residence there. That was a house which the defendant and his brother acquired and maintained as a home for their parents during their lives and later for other members of the family. The defendant made his home there. The defendant voted whenever possible and paid his taxes in Brockton. He was engaged in

the rubber business in the far east from 1908 to 1918 and was absent from America about three fourths of the time. In 1919 he became interested in the oil prospecting business, organized a New York corporation known as the United North and South Oil Company, Inc., for that purpose and was its chief stockholder. It became financially successful in 1925. In that year he acquired the sole title to the homestead in Brockton of which he had theretofore been part owner, and to the former summer home of his parents on Buzzards Bay in Wareham, and made considerable additions to both of them. For the latter he bought adjoining land and made extensive enlargements and alterations to the buildings at an expense of more than $100,000. It was his purpose thus to provide a summer home for his sisters but also to have the house available for the descendants of his father and mother. The defendant caused to be organized in 1925, and chartered in February, 1926, a corporation known as "A House on the Sand, Inc." Although this was organized under the business corporation law of this Commonwealth, it was not designed and has never been operated for profit. The defendant owns all the stock. To this corporation he conveyed the Buzzards Bay property. Automobiles were bought and paid for by the defendant and transferred to this corporation. He has paid all the upkeep and expenses of the property and has used it and the automobiles as his own since December, 1926, as well as before. In June, 1926, the defendant organized a corporation called "The Davis House, Inc." of which he owned substantially all the stock and conveyed to it the homestead property in Brockton and several automobiles. The transfer of this property has not affected its use. It has been occupied by the defendant's sister and her companion and by the defendant whenever he has been in Brockton since 1926 just as it was before the transfer. All its expenses have been paid by the defendant. The defendant testified that this house "was a nice place to live in"; that "in it they had the nearest approach to a family home in that they had things there that had been handed down in the family, things of the heirloom type"; that it

was "conducted pretty much the same as any ordinary dwelling house."

The defendant's personal property in 1926 was invested largely in stock of the United North and South Oil Company, Inc., a New York corporation. Beginning in 1925 it paid substantial dividends and the defendant received from this source large sums· of money. Commencing in March, 1926, the defendant and his attorneys had conferences with the commissioner of corporations and taxation (hereafter called the commissioner) as to the rate at which his income from this stock should be taxed, the defendant urging that it should be taxed at the rate of three per cent. They also discussed the rate at which his 1926 income would be taxed in the event of the sale of the assets of the United North and South Oil Company, Inc., to another corporation. The defendant testified that at the time of these conferences he contemplated changing his domicil to Texas but he never wanted to lose the contacts with his friends and relatives in Brockton and he wanted to retain the use of the family homestead. About that time during an illness he had such evidence of friendship on the part of his fellow citizens in Brockton that he felt unable to make the change. In the first half of 1926 the defendant organ̶ized two corporations, one, for furthering the industrial development of Brockton; of which he owned all the capital stock and in which he held important executive offices, and the other, for charitable purposes in that vicinity, of which he is president and to which he has given large endowments. In July, 1926, the defendant was notified that his dividends from the oil stock received in 1925 would be assessed at the rate of six per cent. That tax was paid in October, 1926, and the matter of the defendant's tax for income received during 1926 was taken up again with the commissioner. On December 9 a letter was written to the commissioner by counsel for the defendant stating that the latter did not contend that he was exempt from taxation but contended that the rate should be three per cent. rather than six per cent. The defendant testified that this letter set forth correctly his position at that time. The commis-

sioner replied by letter dated December 14, 1926, stating that the same principles of law must be applied to transactions involving large and small amounts and that the income of the defendant from the oil company must be taxed at six per cent. Thereafter acting under advice of counsel the defendant took various steps in order to avoid payment of the income tax in this Commonwealth. A friend in Luling, Texas, one Baker, gave him his house with the understanding that Baker and his family might make their home there as long as they wished. The defendant said to the mayor of Brockton and to various other people there that he intended to change his domicil to Texas. He transferred to the two corporations, "A House on the Sand, Inc.," and "The Davis House, Inc.," all of his furniture, household articles and other articles of personal property with the exception of a portrait, a few photographs of members of his family and his clothing which were sent to him in Texas. He left Brockton on December 21 and arrived in Luling, Texas, on December 25, 1926, and on the later date received the deed of the house in Luling from Baker. All the furniture in that house belonged to the Bakers except the personal effects of the defendant which were in one room. The Baker family continued to live in the house just as before the transfer to the defendant. The house was kept substantially the same as before except that the defendant paid the expenses. Thereafter when in Luling the defendant stayed at this house. The population of Luling was about six thousand. The business and other activities of the defendant generally took him away from Luling. The house owned by him there, deeded to him by Baker, was some distance out of the town on an ungraded gravel road and was outside the city limits until December, 1929. After his arrival in Texas the defendant announced to various people that he had taken up his residence there, wrote to the registrars of voters in Brockton requesting the removal of his name from the voting list, and telegraphed to the assessors and to the city clerk of Brockton and wrote to the commissioner notifying them that he had become a citizen of Texas and had ceased to be a citizen of Brockton. No-

tice to the same effect was published in the Brockton Times. He caused the name on his office door in Brockton to be changed to read "Edgar B. Davis of Luling, Texas." On December 28, 1926, he paid a poll tax in Texas although none was due. Since 1926 he has made his Federal income tax returns and paid his Federal income taxes to the collector of internal revenue in Texas. He voted in Texas by mail in 1927 and personally in 1928. Since December 21, 1926, he has given his address as Luling, Texas, on hotel registers. Following his alleged change of domicil to Texas there has been no change in the mode of living or activities of the defendant. In fact he spent a good deal more time in Texas before 1926 than after that year. He remained in Luling only five days after his arrival there on December 25, 1926, being called to the north on business. In a statement as to domicil filed with the commissioner on March 20, 1928, calculated and intended to influence his decision as a public officer, the defendant disclosed that his alleged change of domicil from this Commonwealth to Texas was made under "Divine Guidance" and "is the result of religious conviction," but did not mention that his real reason was to avoid the income tax law of this Commonwealth. He testified that this omission was unintentional on his part. Except for poll taxes and the Federal income tax the defendant paid no tax whatever for 1926. Two sisters of the defendant, his sister-in-law, two nephews and a niece were living in Brockton in 1926 and have continued to live there and he has no relative living in Texas. Since December, 1926, the defendant has been as frequently in Brockton and Buzzards Bay as before; when there he has occupied the houses before described and has made large contributions to charitable and other organizations in Brockton. He has retained his office in Brockton and has maintained deposits in two Brockton banks. The defendant testified that he had a "bigger job" or "a more difficult job to do in Brockton" than in Luling, referring as the jury might have found to the latter part of 1926 and the years following.

The defendant would be subject to the income tax laws

of the Commonwealth for the year 1926 if his domicil remained in Brockton after December 31, 1926. The defendant does not contend to the contrary. G. L. c. 62, § 25. (It is not necessary to decide whether he would also be liable for the income tax of 1926 even though he did not continue to be an inhabitant of the Commonwealth for some part of 1927. *Ness* v. *Commissioner of Corporations & Taxation,* 279 Mass. 369, 370. *Kennedy* v. *Commissioner of Corporations & Taxation,* 256 Mass. 426, 429. St. 1929, c. 361, § 2, amending G. L. c. 62, § 25. See now G. L. [Ter. Ed.] c. 62, § 25.) Confessedly the domicil of origin of the defendant continued in Brockton at least until his arrival in Luling, Texas, on December 25, 1926. *Ness* v. *Commissioner of Corporations & Taxation,* 279 Mass. 369. Every one must have a domicil somewhere. Every one has a domicil of origin. Domicil of origin is not lost until a new domicil is actually acquired. Since it was admitted that the domicil of the defendant was and always had been in Brockton until December 25, 1926, that domicil is presumed to have continued in the absence of compelling evidence that it was changed. The burden of proof that his domicil was changed rested on the defendant because he is the one who asserted that such change had taken place. He set it up as an affirmative defence. In order to prevail he must prove it. *Kilburn* v. *Bennett,* 3 Met. 199, 201. *Commonwealth* v. *Bogigian,* 265 Mass. 531, 538. *Ness* v. *Commissioner of Corporations & Taxation,* 279 Mass. 369, 371. Ascertainment of the domicil of an individual is mainly a question of fact to be determined from all the evidence and circumstances. *Lyman* v. *Fiske,* 17 Pick. 231, 234. *Williams* v. *Roxbury,* 12 Gray, 21, 22. *Olivieri* v. *Atkinson,* 168 Mass. 28, 29. *White* v. *Stowell,* 229 Mass. 594, 597. *Tuells* v. *Flint,* 283 Mass. 106, 109. It is rarely that it can be ruled as matter of law in the absence of binding admissions or agreement as to facts that particular facts have been proved or that the burden of proof has been sustained. This is especially true when the evidence consists in essential particulars of oral testimony and the facts depend upon the degree of credi-

bility to be attributed to a witness. *Brusseau* v. *New York, New Haven & Hartford Railroad,* 187 Mass. 84, 85. *McDonough* v. *Metropolitan Life Ins. Co.* 228 Mass. 450, 452, and cases collected. *Lockhart* v. *Ferguson,* 243 Mass. 226, 228. This rule was recognized in *Dickinson* v. *Brookline,* 181 Mass. 195. It is difficult if not impracticable to give a definition of domicil at once accurate and comprehensive. It commonly depends upon no one fact or combination of circumstances but upon all the factors disclosed in the particular case. In general it is said to be the place of actual residence with intention to remain permanently or for an indefinite time and without any certain purpose to return to a former place of abode. It was said by Chief Justice Shaw in *Lyman* v. *Fiske,* 17 Pick. 231, 234, in dealing with the subject of domicil: "In general terms, one may be designated as an inhabitant of that place, which constitutes the principal seat of his residence, of his business, pursuits, connexions, attachments, and of his political and municipal relations."

The defendant was a single man of large wealth and great experience in business affairs. Manifestly he had deep attachments in Brockton where most if not all of his near relatives resided and where he had considerable financial interests. The jury might well have found that the motive which prompted the elaborate arrangements of the defendant already described was a desire to avoid the income tax of this Commonwealth. Doubtless one may change his residence in order to live under different tax laws. When that is the underlying purpose of an attempt by any one to change his domicil, it is but natural that his testimony be scrutinized with care to determine whether it establishes all facts necessary to accomplish that result. "A man cannot elect to make one place his home for the general purposes of life, and another place his home for the purpose of taxation." *Pickering* v. *Cambridge,* 144 Mass. 244, 245. *Abington* v. *North Bridgewater,* 23 Pick. 170. *Feehan* v. *Tax Commissioner,* 237 Mass. 169, 171. It was for the jury to determine in the case at bar whether all the facts as they found them to be manifested a real intention to

change the domicil of a lifetime in Brockton and to fix it in Luling, and whether, if such purpose sufficiently appeared, there was an actual change of residence or merely an ostensible and temporary sojourn to escape from what the defendant regarded as excessive taxation. *Tax Collector of Lowell* v. *Hanchett,* 240 Mass. 557, 561. *Kerby* v. *Charlestown,* 78 N. H. 301. The circumstance that the defendant owned a house in Luling in the conditions already described while the dwelling in Brockton which for many years had been his home was conveyed to a corporation in which the defendant was substantially the sole stockholder and which was used as it always had been is not decisive. All the facts were to be weighed in determining the ultimate question whether the domicil of the defendant was changed during that last week in 1926.

It is familiar law that a jury is not obliged to believe uncontradicted testimony if on the whole they find it not credible from the appearance of the witness, from his interest in the controversy or from other circumstances. There was evidence in the case at bar already narrated to justify the answer of the jury to the effect that the defendant's domicil was not changed. In trying to ascertain what is the deep and settled intent of a person, much may depend upon his appearance upon the witness stand and his manner of testifying. Testimony as to intention is not conclusive. *Wright* v. *Boston,* 126 Mass. 161, 164. The credibility of witnesses is ordinarily entirely for the fact finding tribunal. Candor is always important. Commonly how much or how little of the testimony of a witness is to be believed is for the jury. *Cochrane* v. *Boston,* 4 Allen, 177. *McDermott* v. *Sallaway,* 198 Mass. 517, 519, 520. *Lindenbaum* v. *New York, New Haven & Hartford Railroad,* 197 Mass. 314, 323. *Tax Collector of Lowell* v. *Hanchett,* 240 Mass. 557, 561. *Cosman* v. *Donovan,* 282 Mass. 224, 228.

It was for the jury to decide whether the defendant had a *bona fide* intention to change his home for the general purposes of life or whether he merely wished to make it appear that he had changed his residence in order to avoid the tax of this Commonwealth. The fact that he made no

change in his method of living, the relative attractiveness to him of Brockton and Luling as places of abode, the small amount of time spent and the meager personal belongings left in the latter place, and the evidence as to his philanthropic, social and family interests, the various reasons for the change put forward from time to time and the very elaborateness of his formal public announcements on the subject, all might have been regarded as negativing, or at least as failing to prove, a change of domicil.

The result is that the case at bar falls within the general rule that there was no error of law in the denial of the defendant's request for the direction of a verdict in his favor on a point depending upon oral testimony. Whether the defendant had sustained the burden of proof resting upon him as to a change of his domicil was for the jury.

Since there are no exceptions to the charge it must be presumed that it was sufficiently full and accurate.

The trial judge filed a certificate on the exceptions as allowed to the effect that the defendant sought to incorporate in the bill of exceptions over the plaintiff's objection two statements: (1) a statement that at the time exception was saved to the denial of the defendant's motion for a directed verdict in his favor counsel for defendant said: "On the question of the validity of the tax sought to be collected in this action the defendant raises three and only three objections. First: That the tax should have been at the rate of three instead of six per cent. Second: That if the tax should have been at the rate of three instead of six per cent, the three per cent tax cannot be recovered in this action. Third: That the tax laws of this State as applied and sought to be enforced in this case are unconstitutional. THE COURT. It is agreed subject to the law questions herein reserved that if the jury answer the special question in the negative the court may order a verdict for the plaintiff for the amount claimed in its declaration"; and (2) a statement to be added to a sentence in the exceptions that "The foregoing is all the material evidence on the question [of change] of domicil" these words "and on the question of the validity of the tax sued for."

The trial judge found that both these statements were conformable to the truth and allowed them as a part of the exceptions provided this court should be of opinion that he had a right to do so over the objection of the plaintiff upon the following facts: The defendant filed his original proposed bill of exceptions on February 27, 1931, and the time for filing as extended expired on March 2, 1931; that bill did not contain the second stipulation now embodied in the present bill, which sets out the amount of stock owned by the defendant in the United North and South Oil Company, Inc., the sale of its assets and the dividends paid to the defendant, and which has been summarized earlier in this opinion. Statements in the original proposed bill now contended by the defendant to bear upon the validity of the tax are printed in a foot note.*

This was the proper form in which to present the question whether the additions could rightly be made to the exceptions over the objection of the plaintiff. *Commonwealth* v. *Greenlaw*, 119 Mass. 208.

The exceptions to which a party is entitled are those set forth in his bill of exceptions as filed. *Morse* v. *Woodworth*, 155 Mass. 233, 241. A bill of exceptions is not to be construed so strictly that if it appears from the draft presented that in preparing it a party had an exception in mind which

---

* " 'The Commonwealth also offered in evidence an income tax return filed by the defendant with the commissioner of corporations and taxation of Massachusetts on March 20, 1928, covering income received during the year 1926, which stated that the defendant's home and business address was Luling, Texas, and that he made a return from 1106 Main Street, Brockton, Massachusetts, in the year 1926, but none in 1927, and which showed receipt of moneys during the year 1926 by the defendant to the extent of $6,348,-839.80, on which a tax of $380,930.39, together with accrued interest of $17,141.87, making a total tax with interest of $398,072.26, was assessed by the Commissioner.' 'The defendant testified: That early in May, 1926, the oil properties in which he was interested in Texas brought in substantial producing oil wells; that thereafter he negotiated with the Magnolia Petroleum Company for the sale of these properties and the stock in the company or of the stock in the company owning these properties in which he had controlling interest; that in March, 1926, when the sale of the Magnolia Petroleum Company was about to be consummated he discussed with his Brockton attorneys the situation in regard to what he would have to pay to the Commonwealth by way of taxes and also discussed this question with Henry F. Long, Commissioner of Corporations and Taxation of the Commonwealth; that he was then informed that he would probably be taxed at the rate of six per cent upon all of the money which he personally received from the sale of the Texas oil properties, as all of such money or practically all of it would

is imperfectly stated, the form of statement cannot be clarified by amendment so as to present it properly. The rights of an excepting party are not defeated by mere verbal errors or unimportant defects in phraseology. But if a party files a bill containing certain exceptions and omits altogether to state another exception, it cannot be added against the objection of the other party after the expiration of the time for filing exceptions. *Dorr* v. *Schenck,* 187 Mass. 542. *Currier* v. *Williams,* 189 Mass. 214, 219. *Sullivan* v. *Crave & Martin Co.* 193 Mass. 435, 437. *Commonwealth* v. *Dow,* 217 Mass. 473, 482, 483.

The evidence printed in the foot note and contained in the original bill is altogether insufficient to convey any idea of the details of the sale of the property of the United North and South Oil Company, Inc., to the Magnolia Petroleum Company or to afford any basis for decision whether the income of the defendant derived from that source ought to be classified as capital gain or as strict income. That evidence at most served as a background for the chief contention as to change of domicil by the defendant. It was expressly stated in the original bill that it contained "all the material evidence on the question of change of domicil." The only exception stated was the one to the

be treated as income by the Commonwealth; That on or about December 6, 1926, in company with his Brockton attorneys he had a conference with Mr. Long for the purpose of attempting to persuade Mr. Long that he should be assessed a tax of three per cent on the money which he received, treating it as capital gains rather than an income; that he was notified by Mr. Long by letter on December 14, 1926, that the moneys which he received during 1926 would have to be taxed by the Commonwealth at the six per cent rate.' 'Henry F. Long, Commissioner of Corporations and Taxation of the Commonwealth of Massachusetts, called by the defendant, confirmed the statements of the defendant as to the conferences held in 1926 concerning the defendant's Massachusetts tax and admitted receipt of a written notice from the defendant of December 27, 1926, concerning his intended change of domicil.' The said original proposed bill of exceptions concluded as follows: —'The foregoing is all the material evidence on the question of change of domicil. At the close of all the evidence the defendant having rested moved in writing that the court direct a verdict for the defendant. The court denied this motion and the defendant duly excepted and the court saved the defendant's exception. A special question was then put to the jury as follows: "Did the defendant Edgar B. Davis change his domicil from Brockton, Massachusetts to Luling, Texas in fact?" The jury answered this question, "No," and thereupon upon direction of the court a verdict was entered for the Commonwealth in the sum of $439,537.97. The defendant being aggrieved by the denial of his motion for a directed verdict prays that this, his bill of exceptions, be allowed.' "

denial of the defendant's motion for a directed verdict in his favor. The three questions of law stated in the certificate of the trial judge were utterly omitted from that bill. The original bill as filed conveys no intimation of contention as to the invalidity of the tax on any other ground than a change of domicil.

The fact that the plaintiff agreed to the insertion in the bill as allowed of the stipulation setting forth the facts touching the sale of the assets of the United North and South Oil Company, Inc., and the declaration of its dividends constituting the income of the defendant gives the defendant no right further to amend his bill. The plaintiff has never agreed to the insertion of the matter now sought to be added but has objected to it. There is nothing to warrant inferences of permission to the defendant to raise questions not included in the bill filed.

The conclusion is that the trial judge had no right to allow the additions to the bill of exceptions as requested by the defendant. It is unnecessary to discuss other questions argued.

It may not be inappropriate to add that if the questions urged by the defendant as to the rate of taxation and the constitutionality of the statute be regarded as open, seemingly they are foreclosed against the contentions of the defendant by *Follett* v. *Commissioner of Corporations & Taxation,* 267 Mass. 115, *Commissioner of Corporations & Taxation* v. *Hornblower,* 278 Mass. 557, and *Boston Safe Deposit & Trust Co.* v. *Commissioner of Corporations & Taxation,* 262 Mass. 1, which hold in similar circumstances that such income as that received by the defendant was taxable at the rate of six per cent and that the statute thus construed was constitutional.

*Exceptions overruled.*